# Harton, *et al. v.* Amason.

### Bill to Enforce Attorney's Lien.

(Decided February 3, 1916.  71 South. 180.)

1. **Attorney and Client; Attorney's Fees; Settlement; Fraud.**—No fraud on an attorney's right to his fee can be predicated of the conveyance to a corporation of property in the settlement of the litigation, the client being president of the corporation, under an agreement approved by the attorney, which called for a conveyance to the client or to the corporation if it should be so required.

2. **Same; Lien; Waiver.**—Where an attorney had a written contract for his fee and approved an agreement for settlement which required the conveyance of certain lands to his client, or to a corporation, if the client should so require, and neither the contract for the fee nor that for the settlement gave the attorney a contractual lien, he waives his statutory lien, if § 3011, Code 1907, can be construed to give a lien on the land, the title to which is vested in the client in consideration of a dismissal of the suit.

3. **Same; Lien; Real Estate.**—The provisions of § 3011, Code 1907, make no change in the former rule that an attorney has no lien on the real estate of his client.

4. **Trusts; Resulting; Consideration; Attorney's Fee.**—Where an attorney had a written agreement for his fee, and the amount thereof depended on the

[Harton, et al. v. Amason.]

value of certain corporate stock, and he approved the contract for settlement which required the transfer of land to a corporation, of which his client was president, for a stated consideration which did not include his fee, he cannot claim a resulting trust in the land on the theory that he furnished a part of the consideration therefor, since such a trust can arise, in the cases of partial payment, only when the partial payment is a definite aliquot part of the consideration.

5. **Trusts; Constructive; Fraud.**—Neither can he, in such a case, claim a constructive trust in the land, since such a trust always arises from fraud, either actual or constructive, and his consent to the settlement negatived any fraud on his rights.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by S. C. M. Amason against H. M. Harton and others. From decree overruling demurrers to the bill, respondents appeal. Reversed and remanded.

The bill alleges the employment by Harton of orator as an attorney to advise him as to his rights against the other respondents to this cause, or some of them, and that Harton authorized the institution and prosecution of a certain suit in the chancery court of Jefferson county against all the respondents to this suit, together with one Lula B. Harton, said cause being numbered 5443, in said chancery court; (2) that orator and Harton, on April 15, 1910, entered into a certain written contract of that date, as to the terms of orator's employment with relation to said suit, and the fee he was to receive for the services rendered therein, a copy of which is attached and marked "Exhibit A." The bill then gives the history of the work done, and the appeals prosecuted from the decrees rendered. It is then alleged that while said last appeal was pending, as aforesaid, Harton, with orator's consent, entered into negotiations with defendants, or some of them, for a settlement of the litigation, and later orator was informed by the solicitors of record for respondent, and also by Harton, that the negotiations had resulted in an agreement for settlement between them, and later, in May, 1915, an instrument, setting forth the terms of said agreement for settlement, was submitted to orator for his approval by counsel of record for respondent, which instrument already bore the signature of said Harton, as well as those of the several respondents, and your orator on, to wit, May 3, 1915, indorsed thereon the following words: "I hereby consent to the foregoing agreement of settlement." A copy of the agreement is made Exhibit B. Orator fur-

[Harton, et al. v. Amason.]

ther shows that afterwards, and in furtherance of said settlement, the respondents Enslen, Johnson, and the Empire Realty Company, either separately or jointly executed to defendant Windsor Realty & Trust Company deeds purporting to convey to such company all the property recited in said agreement of settlement, which respondents had obligated themselves therein to convey to Harton, or to the said Windsor Realty & Trust Company, as the said Harton should require, and the title to all of said property now appears by the record in the office of the judge of probate of Jefferson county, to remain in the said Windsor Realty & Trust Company. It is alleged, further, that Harton had refused to pay him for his services as counselor and solicitor under the contract; that complainant had never compounded with him for the same, and that the deeds to the property were executed to the said Windsor Realty & Trust Company without orator's consent; and that orator has never consented to it being conveyed by respondents to anybody, even to said Harton, before orator's fee for his services should have been paid or otherwise secured to said orator than by the statutory lien in favor of attorneys at law; and that the said Windsor Realty & Trust Company is chargeable with full knowledge that orator has not been paid or settled with for his said fees, because Harton is and has always been president of said corporation, and said corporation is, as orator verily believes, a mere volunteer to the title of said property. The bill was afterwards amended by alleging that the suit was for money, among other things, and the prayer was amended by praying in the alternative that the conveyance of the lands under the direction of defendant Harton to defendant Windsor Realty & Trust Company, before orator's claim was satisfied, was a fraud against orator, and that for that reason the said Windsor Realty & Trust Company holds title to said land as a trustee to satisfy the claims of orator as a creditor of defendant. The substance of the agreement sufficiently appears.

STOKELY, SCRIVNER & DOMINICK, for appellant. HENRY UPSON SIMS, for appellee.

McCLELLAN, J.—The appellee, an attorney at law and solicitor in equity, filed this bill, against appellants and others, to have declared and enforced his right to compensation for services rendered by him under written contract with his client (ap-

pellant) H. M. Harton, in litigation instituted by said Harton. The dominant purpose of the bill is that just stated. All other matters with respect to which relief is sought are but incidental to the major purpose of the bill. In the written contract between appellee and Harton the measure of appellee's compensation was fixed at a "sum of money equal to one-fifth the value of fifty shares of the capital stock, including all accrued dividends due and payable thereon, or that may become due and payable on the same, of the Ensley Realty Company, on the rendition of a final decree in said suit,  *  *  *  or upon the compromise and settlement of said suit, if the same should be compromised and settled without being prosecuted to a final decree," further providing a limitation on the compensation to $10,000. The agreement did not purport to satisfy the appellee's charge for compensation out of the shares of stock of the corporation. The contract, ex vi termini, did not impose a charge upon the shares of stock to assure the payment of the appellee's compensation for professional services. The only effect of the allusion to the capital stock was to measure the amount of the appellee's compensation. The litigation and all related, assumed, or anticipated bases of claim or controversy were compromised and settled by all the parties concerned in the assertions of right or claim made by Harton; the formally executed written agreement to that end being exhibited with the bill. No final decree consistent with Harton's theories of his asserted claim or right was rendered. This agreement of compromise and adjustment was submitted to appellee, who, the bill avers, indorsed thereon his consent thereto in these words: "I hereby consent to the foregoing agreement of settlement." On the exhibit his indorsement is thus phrased: "I hereby approve the foregoing agreement of settlement." In the agreement of settlement no reference whatever was made to appellee's compensation for his services to Harton, or to any obligation Harton was under to appellee because of services rendered to Harton by appellee as Harton's professional representative.

It is averred in the amended bill that the professional services were rendered in cause numbered 5443, "which was a suit for money, among other things." In the agreement of compromise it was provided that cause numbered 5443, then pending in the Supreme Court on appeal by Harton from an adverse rul-

[Harton, et al. v. Amason.]

ing on demurrer by the chancery court of Jefferson county, should be affirmed, that when affirmed the cause should be dismissed by the chancery court, and that such dismissal should have the effect of a final adjudication of said cause. This cause had been the subject of prolonged litigation. The appellee's services in that litigation are the basis of his claim for remuneration asserted in the present bill. In the fourth paragraph of the agreement of compromise the "parties of the second part"—Harton being . designated as the "party of the first part"—agreed "to convey or cause to be conveyed unto the said H. M. Harton, or, if he desires, unto the Windsor Realty & Trust Company," a corporation of which Harton was and is the president, certain real estate therein described. This engagement to convey was effected by deeds to the Windsor Realty & Trust Company. It is this real estate, with an exception noted in the bill, upon which appellee would have a lien for his remuneration declared, or upon which, in the hands of the company, he would have declared and enforced a trust for his remuneration. Knowledge of appellee's right to compensation for his services and of the fact that the Windsor Realty & Trust Company, through its president, knew of the refusal of Harton to compensate appellee for his professional services may, for the occasion, be assumed to be sufficiently averred in the bill.

(1) The conveyance to the Windsor Realty & Trust Company of the realty described in the agreement of compromise was obviously in accord with the provisions of the agreement therein set forth, an agreement the appellee himself in writing approved. No fraud upon the asserted right of the appellee could be predicated of this thus approvd act of conveyance. There is no suggestion of anything that should or would avoid the agreement of compromise, so approved by the appellee. The bill's theory consists alone with the complete validity of the agreement of compromise. If the appellee had desired to guard his conceived right in the premises, he should have manifested his purpose in season before expressly approving in advance the conveyance of the property to either Harton or to the company. Presumptively, at least, the conveyance to the company was in accordance with Harton's desire, as stipulated for in the agreement of compromise.

[Harton, et al. v. Amason.]

(2) It is manifest that appellee neither had nor has any contractual lien upon the real estate described in the agreement of compromise for his remuneration for professional services rendered by him in the cause mentioned by him in his bill. Neither the averments of the bill nor the exhibits thereto, nor both together, import a purpose on the part of any one to create a contractual lien to assure appellee's remuneration.

(3) While an attorney at law or solicitor in chancery has a lien for his remuneration for professional services in that particular behalf upon a judgment or decree obtained for his client to the extent of his agreed or his reasonable compensation (*Higley v. White*, 102 Ala. 604, 15 South. 141), and a positive lien for his remuneration in that and other instances and circumstances described and defined in Code, § 3011, the law in this jurisdiction remains, in the respect to be stated, as it was before the enactment of the statute (Code, § 3011), viz., that an attorney or solicitor has no lien on real estate of his client for his remuneration (*Higley v. White, supra; Kelly v. Horsely*, 147 Ala. 508, 41 South. 902). Before the statute, an attorney's or solicitor's lien on a judgment or decree for money was held to be a charge upon the proceeds derived from a sale of land to satisfy that money judgment or decree.—*Higley v. White, supra.* No judgment or decree having been rendered in this instance, no lien of the character and effect last stated came into existence, unless it could be affirmed that the statutory lien upon suits (section 3011) extended to lands the title to which is vested or confirmed in the client, upon the consideration, in whole or in part, of a dismissal of the suit by the consent of the client and of the attorney, thereby applying the principle of *Higley v. White, supra,* as last stated. Whatever may be the ultimate construction of the statute in the respect indicated, it is quite clear in this instance that the agreement of the attorney to the dismissal by his client of the suit upon which he would now rest a claim to a statutory lien effected to extinguish the basis of any statutory lien that might once have existed upon the suit.

(4) The consideration for the conveyance of the land described in the compromise agreement was named in the compromise agreement, which, as has been stated, the appellee consented to and approved. The obligation of Harton to remunerate appellee for his professional services was not mentioned in the

[Harton, et al. v. Amason.]

compromise agreement. In order to lay the foundation for a resulting trust, in favor of one who did not, at the time, pay all the purchase money or afford all the consideration, for a conveyance of real estate the title to which has been invested in another, it is essential that the partial payment should be of a "definite aliquot part of the consideration."—*Bibb v. Hunter*, 79 Ala. 351, 361; *Allen v. Caylor*, 120 Ala. 251, 24 South. 312, 74 Am. St. Rep. 31; *Olcott v. Bynum*, 84 U. S. (17 Wall.) 44, 21 L. Ed. 570. Aside from anything else, it will be sufficient to say, in respect of the phase of the bill that would have a resulting trust in the land in question declared in favor of appellee for remuneration for his professional services, that the value of his services under his contract with Harton is so uncertain in amount as to forbid the creation of a resulting trust to his advantage. It does not appear from the bill that the value of his services, in any sense, was an aliquot part of the consideration inducing the conveyance of land by the parties of the second part to the compromise agreement.

(5) Since a constructive trust is ever the result of either actual or constructive fraud (3 Pom. § 1044; *Butts v. Cooper*, 152 Ala. 375, 385, 44 South. 616), it is clear that the bill under consideration does not state a case wherefrom it could be concluded that a constructive trust in favor of the appellee came into existence at any time. There is in the bill no charge of actual fraud. Indeed, the approval of the agreement of compromise by the appellee negatives any notion of an imposition upon his rights as a result of the conveyance of the property to the Windsor Realty & Trust Company. The doing of that which one consents, without fraudulent inducement, may be done, cannot be pronounced a fraud upon his rights. The decree of the chancellor overruling the demurrer is laid in error. The bill is without equity. The decree is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.