# Denson v. Alabama Fuel & Iron Co.

## Intervention.

(Decided December 21, 1916.   73 South. 525.)

1. **Attorney and Client; Lien; Compensation; Jury Question.**—The evidence examined and held to present a question of fact as to the existence of an attorney's lien or whether the lien was waived.

2. **Contract; Public Policy.**—If constitutional, the acts of the Legislature declare in terms the public policy of the state and in ascertaining such policy as to any matter these acts should primarily be looked to.

3. **Same; Validity; Partial Invalidity; Effect.**—In contracts that are severable if the right asserted can be established without a void stipulation, the recovery is not affected by an illegal clause in the contract.

4. **Same; Attorney's Lien.**—An attorney's lien on the suit under his contract of employment may be established under § 3011, Code 1907, without a stipulation that a settlement should not be had by the client without the consent of his counsel, and such stipulation being severable, its invalidity does not affect the right of an attorney to his lien.

5. **Constitutional Law; Class Legislation; Burden of Proof.**—The general rule is that one who assails the classification in a statute has the burden of showing that such classification does not rest on any reasonable basis but that it is essentially arbitrary.

6. **Statute; Class Legislation; Reasonableness.**—The legislature may pass laws applicable only to the members of a class where such classification rests on some attribute or some disability, marking them as proper objects for the operation of special legislation, provided not expressly inhibited by the Constitution.

7. **Same; Attorney's Lien.**—Section 3011, Code 1907, is a general law and makes no essentially arbitrary and unreasonable classification.

8. **Attorney and Client; Lien.**—The lien given by § 3011, Code 1907, to an attorney is not dependent on the service of process since the filing of the complaint in law or the bill in chancery in the proper county and court is the commencement of the suit under the express provision of §§ 3092 and 4853, Code 1907.

[Denson v. Alabama Fuel & Iron Co.]

9. **Same; Intervention.**—Where the attorney intervened to enforce his lien on the suit the liability to the lien and the amount thereof will be determined as it would have been in the prosecution of the original suit, and a settlement by the original parties to the suit may be shown only to show that the client had given an acquittance to the extent of his interest in the suit.

10. **Same; Enforcement.**—Where the attorney intervenes to enforce his lien on the suit and there is evidence that the original plaintiff was to receive one-half of any sum recovered by the attorney, in addition to the amount already paid in his settlement with the defendant, it was not error to admit the contract of settlement in evidence.

11. **Appeal and Error; Harmless Error; Review.**—Where prejudicial error intervened on the trial the judgment will not be affirmed on the ground that intervenor failed in proof of a material fact where such fact was assumed in charges given at the request of the defendant.

APPEAL from Shelby Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by James W. Perkins, as administrator, against the Alabama Fuel & Iron Company, with intervention by W. A. Denson. From a judgment for defendant, the intervener appeals. Reversed and remanded.

Plea 8 was as follows: That the only contract which intervener had with plaintiff to bring said suit was under and by virtue of a certain written contract executed between James W. Perkins, father, and Mary R. Perkins, mother, of interstate, and the sole distributees of his estate, a copy of which contract is hereto attached, marked Exhibit A, and made a part hereof. And defendant avers that the letters of administration on the estate of said intestate were taken out under and by virtue of the terms solely of said contract of employment set out and set forth, and this suit brought under and by virtue of the terms of employment set forth solely in said contract. And defendant avers that the provision in said contract, "It is further agreed that neither party could settle nor compromise the claim in or out of court without the consent of the other," rendered said contract totally void and unenforceable.

The following was the demurrer to said plea: The defenses attempted to be availed of in said plea are available under the general issue, which is filed. The facts averred in said plea are not sufficient to support the conclusion that said entire contract is void and unenforceable, and, from aught appearing in the facts alleged in said plea, said contract is enforceable. For aught appearing in said plea, intervener had a valid contract with said

administrator of said estate to bring said suit at the time said suit was brought; does not confess and avoid the petition for intervention.

The following is charge B, given for appellant: The court charges the jury that, if you believe from the evidence that the contract of employment between the plaintiff and intervener had a provision therein in substance providing that neither party could settle nor compromise the case, either in or out of court, without the consent of the other, then I charge you that intervener cannot recover.

W. A. DENSON and RIDDLE & ELLIS, for appellant. PERCY, BENNERS & BURR, for appellee.

THOMAS, J.—This cause was heard by the circuit court of Shelby county, and the trial resulted in a judgment for defendant. The facts are in dispute. It is not controverted, however, that on November 18, 1913, two sons of the original plaintiff, James W. Perkins, were killed in an explosion occurring in a coal mine operated by appellee, the Alabama Fuel & Iron Company, a body corporate; that on November 26, 1913, an attorney who was employed in the law office of intervener was sent to see said Perkins and wife, the sole distributees of intestates, and drew up and had signed by the Perkinses a written contract, in which intervener was employed to bring suit against appellee for said homicides. This agreement provided, in substance, for a remuneration to intervener in a sum "equal to one-half of the recovery there may be had in this case, either by settlement or compromise out of court, or in court, or by a verdict of a jury, or by the court without intervention of a jury," and, in case there should be no recovery, that nothing was to be paid for the said services and undertaking. The contract contained the further stipulation:

"It is further agreed that neither party shall settle or compromise this case either in or out of the court without the consent of the other; and each party agrees not to dismiss any suit that may be brought in any court to recover in this case unless by the joint consent of both parties to this instrument."

Intervener insists that he had no knowledge or notice of such contract, and that his name was signed thereto by Ivey, who acted without previous authority from him; that on December

4, 1913, James W. Perkins came to his office and entered into contract with intervener, to bring the suits against defendant for causing the deaths of Perkins' two sons, and by this contract intervener was to be paid a sum equal to one-half of whatever damages were recovered for said wrongful deaths of the deceased Perkinses. Intervener testified that the stipulation as to settlement, in the parol contract, was "that neither party to the agreement was to settle the cause of action without consulting the other," and that at no time was mentioned, by intervener or by Perkins, the said written agreement above adverted to. Thereafter, on the same day, letters of administration on said decedents' estates were granted to Perkins.

Suit for said homicides was commenced in the circuit court of Shelby county, Ala., on December 6, 1913, being instituted by intervener as attorney for said administrator of the Perkins' estates. On December 5, 1913, the vice president and general manager of appellee corporation, and its attorney, called at Perkins' home and offered to settle these claims against the company, to which offer Perkins replied that he could not accept, because of the existence of a contract of employment between himself and intervener as his attorney in such matter, and on request Perkins produced said written contract and exhibited it to defendant's agents. Perkins was then requested by said officers or agents of defendant to call at the office of said company's attorney, in Birmingham, at a designated date thereafter, which Perkins promised to do. On December 8, 1913, when next in Birmingham, Perkins called on his attorney (intervener), stated the offer of compromise so made by the company to him, and indicated that he wished to accept. Intervener did not expressly refuse his assent to this acceptance on the part of the administrator for the estate of his intestates and plaintiff in the suit, but informed the administrator that he must not be understood as in any way waiving his lien as the attorney bringing the suit, secured to him by section 3011 of the Code of 1907. Thereafter Perkins went immediately to the office of the defendant company's attorney, accepted the compromise so offered as such administrator, was paid the sum agreed upon, and executed a full release and discharge of the defendant for such personal injuries.

While Perkins was in appellee's office, and before this settlement was concluded, a phone conversation ensued between inter-

vener and the company's attorney having in hand the matter of the adjustment and settlement of the Perkins claim, the substance of which conversation is a matter in dispute. Intervener testified that he told this company's attorney that the suit for the death of Perkins had been brought by him as such attorney for the administrator in the circuit court of Shelby county, and that the suit was then pending, and that, if settlement was made with the administrator, witness would rely upon his rights and lien given by the statute for the collection of his fee in the case. This attorney, who acted for the company in the matter, denied that such conversation as related by the intervener took place, but stated that, in the conversation so had by him over the phone with intervener, no mention of the pendency of any suit in the Perkins case was made, and that said phone conversation related to another claim. This company's attorney further stated that he sent to the Jefferson county courthouse to ascertain if letters of administration had been granted on the Perkins estate, and, if so, whether suits had been brought for the homicides, and that he also phoned to Shelby county to make inquiry to the same effect; that before he had reply from Shelby county a message from intervener as to the Perkins claim was delivered to him through one Davidson, it being to the effect that defendant might settle direct with Perkins, and that intervener would "take care of his part."

(1) This acquiescence in the settlement is denied by intervener, who says that he phoned to the company's attorney to put him on notice that intervener would rest on his rights as attorney under the Alabama statute. The testimony of the defendant's vice president and general manager was to the effect that he desired to settle direct with the deceased miners' father and mother, and that he did not want any damage suit lawyer to get any of the company's money. This conflicting testimony presented an issue of fact for the determniation of a jury (*Amerson v. Corona Coal Co.,* 194 Ala. 175, 69 South. 601; *Tobler v. Pioneer Co.,* 166 Ala. 517, 52 South. 86)—the existence vel non of the lien, and the fact vel non of its waiver (*Harton v. Amason,* 195 Ala. 594, 71 South. 180).

The attorney bringing the original suits for said Perkins, as administrator, asserted by appropriate petition his lien for compensation claimed on the "suit" under section 3011 of the Code of 1907. Defendant's demurrer to the petition for inter-

[Denson v. Alabama Fuel & Iron Co.]

.vention being overruled, defendant pleaded accord and satis-
-faction, founded on the settlement made by defendant with said
plaintiff, Perkins, as administrator. Intervener's demurrer to
such plea was overruled. The cause was tried, and the trial
resulted in a verdict for the defendant. Motion for a new trial
was made, and was overruled. On the trial many exceptions
were reserved, and the rulings on which they were founded are
now assigned as errors. Under our view of the real question
presented by the appeal, it is not necessary to pass on all excep-
tions so reserved to rulings challenged as error.

Intervener contends that by his employment as attorney, and
the bringing of the "suit" pursuant thereto, he acquired a lien
on the suit, that could not be compromised by the parties, and
that, until this lien was satisfied, he had the same right and
power to direct and continue said suit, to the end of the enforce-
ment of his lien as attorney, for the amount so due him; that is
to say, intervener claims that the compromise, without his con-
sent, and without the satisfaction of his attorney's lien, had not
the effect to discharge or destroy that lien, and that as such
attorney of record bringing the suit he may prosecute it to final
judgment, for the ascertainment of the amount of his lien, and
for the satisfaction thereof, as though no such compromise had
ever been made between the parties to the suit. In *Western
Railway Co. v. Foshee,* 183 Ala. 182, 62 South. 500, there was
pointed out the procedure to determine the respective rights of
the parties and of the attorney in such a case—the method pur-
sued in the instant case by petitioning attorney. This is the
rule of procedure declared for such case in New York, Georgia,
and Tennessee.—6 Mayf. Dig. 63; *Forstman v. Schulting,* 35 Hun
(N. Y. 504; *Lee v. Vacuum Oil Co.,* 126 N. Y. 579, 27 N. E. 1018;
*Poole v. Belcha,* 131 N. Y. 200, 30 N. E. 53; *Sidoway v. Jones,*
125 Tenn. 322, 143 S. W. 893; *Johnson v. McCurry,* 102 Ga. 471,
31 S. E. 88; *Little v. Sexton,* 89 Ga. 411, 15 S. E. 490; *Railroad v.
Wells,* 104 Tenn. 707, 54 S. W. 1041. The New York court holds
that the attorney may proceed with the prosecution of the case
without first obtaining leave to do so from the court. The exact
form of the contract of employment of intervener by plaintiff as
such administrator, as well as the question of its validity, is im-
portant in determining whether there existed the relation of
attorney and client between said parties on December 8, 1913—
the date on which the said administrator settled his claim with

the defendant. If the contract of employment did not exist, or if, as entered into, it was a nullity, then intervener had no lien upon which to base his petition for intervention in the original suit.

The question, therefore, is the validity of the statute and its application to intervener's contract rights. The statute provides: (1) "Attorneys at law shall have a lien on all papers and money of their clients in their possession, for services rendered to them, in reference thereto, and may retain such papers until said claims are satisfied, and may apply such money to the satisfaction of said claim."

(2) "Upon suits, judgments, and decrees for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment, or decree, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments, and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them."— Code 1907, § 3011.

Under subsection 2, it has been held that an attorney for the plaintiff has a lien on the cause of action, and may intervene to prosecute the original suit to a final judgment, notwithstanding the parties plaintiff and defendant have settled the pending cause in so far as the plaintiff's interest therein is concerned.—*Fuller v. Lanett Bleaching Co.,* 186 Ala. 117, 65 South. 61; *Harton v. Amason, supra.* The same rule was applied to pending causes in this court in *Empire Coal Co. v. Bowen,* 195 Ala. 384, 70 South. 283, and (after reversal on appeal) in *Lowery v. Illinois Cent. R. Co.,* 195 Ala. 144, 69 South. 954.

Discussing the constitutionality of the statute, appellee's counsel admits that intervener's position depends altogether on the validity of the Alabama statute giving attorney a lien, and insists that our court, in the authorities cited, was very careful to state that "the constitutionality of the act was not before the court for decision." In *Western Railway of Alabama v. Foshee, supra,* it is said: "The constitutional validity of acts of this sort has been generally affirmed by the courts in states where such acts have been adopted.—*Standidge v. Chicago Rys. Co.,* 254 Ill. 524, 98 N. E. 963, 40 L. R. A. (N. S.) 529 [Ann. Cas. 1913C, 65], and note, where some of the cases are collated. We

[Denson v. Alabama Fuel & Iron Co.]

have thought it best not to enter upon a discussion of the only objection which, it occurs to us, may with plausibility be taken against the act, to-wit: That it destroys the right of the parties to a suit to contract and dispose of a disputed claim according to their own concurring notions of right and justice, for the reason that we are satisfied the question cannot be raised by demurrer to pleas as plaintiff undertook to raise it in this case. The statute gives a remedy by providing that attorneys have the same right and power over suits, to enforce their liens, as their clients had or may have. Appellant has suggested that the right is conferred in contravention of public policy. A sound policy might be more convincingly invoked against the remedy, for we conceive that much of difficulty and confusion will arise in the effort to have determined in one finding by a jury the respective rights of plaintiffs, their attorneys, and parties defendant. But we have nothing to do about questions of policy or convenience. That is for the Legislature."

In *Fuller v. Lanett Bleaching So., supra,* Chief Justice ANDER-SON begins the discussion by reserving the question of the constitutionality of subsection 2 of section 3011 of the Code of 1907. The opinion of Mr. Justice MAYFIELD in the *Lowery Case,* however, adverted to the constitutionality of the statute, saying: "While nothing was said in the opinion in *Fuller's Case* as to the constitutionality of the statute, *it was of necessity held valid, because the right of plaintiff's attorney to prosecute was based solely on the statute.* It therefore follows that the defendant's special pleas, while good against the plaintiff's rights, were no bar to the attorney's right to prosecute the suit as for his attorney's fees and the enforcement of his lien given by the statute."

Appellee insists that a contract of employment, containing a provision such as that hereinabove set out, renders the same void as being opposed to the settled policy of the law to discourage litigation and to encourage the settlement of controversies. The trial judge had this view of the law, for, at defendant's request, he instructed the jury in writing as follows: "The court charges the jury that if you believe, from the evidence, that the contract of employment between the plaintiff and intervener had a provision therein in substance providing that neither party should settle nor compromise the case, either in or out of court, without the consent of the other, then I charge you that intervener cannot recover."

Whether the effect of a provision in a contract, in substance that neither party shall settle or compromise the case, either in or out of court, without the consent of the other (under the Alabama statute), renders the whole contract void, or only such provision void, on the ground of public policy, is for our decision.

(2) It is generally recognized that the public policy of a state is to be found in its Constitution and statutes and judicial decisions. In order to ascertain the public policy of a state in respect to any matter, the acts of the legislative department should primarily be looked to, because a legislative act, if constitutional, declares in terms the policy of the state.—*Western Railway of Alabama v. Foshee, supra,* 183 Ala. p. 192, 62 South.. 500; *Gen. Elec. Co. v. Ft. Deposit,* 174 Ala. 179, 56 South. 802. See authorities collected on this point in *Williams v. State, ex rel. Schwartz,* 197 Ala. 40, 72 South. 333, 334; 2 Elliott on Contracts, 3650; Greenhood on Public Policy, p. 1; *Hartford Fire Ins. Co. v. Chicago R. Co.* (C. C.) 62 Fed. 904; *Logan v. Postal Tel., etc., Co.* (C. C.) 157 Fed. 570; 6 R. C. L. § 108; Cooley, Const. Lim. (7th Ed.) 1236.

In the early stage of the development of the common law, there crept in this policy of discouraging litigations and encouraging settlements of controverted questions, and as one of the methods of enforcing the same all strangers were prevented from acquiring an interest in the subject-matter of the litigation or in the suit itself. If the clause in question had the effect to prevent the client from making a settlement without the consent of the attorney, the clause of the contract would come under the ban of the common law; yet it would not necessarily follow that the whole contract of employment would be avoided. That would depend on the severability of the void clause from the contract.

In those jurisdictions in which the question is settled there is a wide difference of opinion, some courts holding the whole contract invalid (*In re. Snyder,* 190 N. Y. 66, 82 N. E. 742, 14 L. R. A. [N. S.] 1101, 123 Am. St. Rep. 533, 13 Ann. Cas. 441; *Kansas City E. R. Co. v. Service,* 77 Kan. 316, 94 Pac. 262, 14 L. R. A. [N. S.] 1105; *Davis v. Webber,* 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81), while other jurisdictions hold that, where the objectionable clause may be separated from the rest of the contract without destroying the latter, the

objectionable clause only will be declared void.—*Weller v. Jersey City Ry.*, 68 N. J. Eq. 659, 61 Atl. 459, 6 Ann. Cas. 442; *Ft. Worth & D. C. R. Co. v. Carlock*, 33 Tex. Civ. App. 202, 75 S. W. 931; *Potter v. Ajax Min. Co.*, 22 Utah 273, 61 Pac. 999; *Barthell v. Chicago Ry. Co.*, 138 Iowa 688, 116 N. W. 813; *Smith v. Corbin*, 135 Ky. 727, 123 S. W. 277; *Brown v. Langford*, 3 Bibb (Ky.) 497; *Kusterer v. Beaver Dam*, 56 Wis. 471, 14 N. W. 617, 43 Am. Rep. 725; *McLane v. Dixon*, 99 S. W. 601, 30 Ky. Law Rep. 683; *Averbeck v. Hall*, 14 Bush (Ky.) 505; *Collins v. Merrell*, 2 Metc. (Ky.) 163; *Swan v. Chandler*, 8 B. Mon. (Ky.) 97. This rule is well expressed in the case of *Newport Rolling Mill v. Hall*, 147 Ky. 598, 144 S. W. 760, as follows: "It would be manifestly against public policy to deny parties to litigation or contemplated litigation the right to settle their causes of action or defense upon terms satisfactory to themselves; and no contract that they may enter into, limiting or depriving them of this right, can be sustained. We therefore have no difficulty in declaring that this provision in the contract was a nullity. This being so, the next question that arises is, Did its vicious quality affect the entire contract, and contaminate it to such an extent that no part of it was enforceable, or can this provision be eliminated and the remainder of the contract upheld? It is maintained by counsel for appellant, and there is authority to support it, that this stipulation vitiated the entire contract. While it is insisted for appellee that the contract is divisible, and that the obnoxious clause can be stricken out and the remainder of the contract sustained, it is often quite difficult to determine whether a contract is severable or entire, and this question frequently arises in the construction of contracts, parts of which are valid and parts invalid. The general rule is that, if the obnoxious feature of a contract can be eliminated without impairing its symmetry as a whole, the courts will be inclined to adopt this view as the one most likely to express the intention of the parties; but if the good and bad are so interwoven that they cannot be separated, without altering or destroying the general meaning and purpose of the contract, the good must go with the bad, and the whole contract be set aside."

It will be observed that in many of the jurisdictions by which these cases are decided there were no statutes permitting the attorneys to acquire a lien for their fee on the suit, or, if so, as observed by Chief Justice ANDERSON in the *Fuller Case*, these

[Denson v. Alabama Fuel & Iron Co.]

statutes "were not identical with the Georgia and Alabama statutes."

(3) The severability of contracts is recognized in this state. If the right can be established without the void stipulation, the recovery is not affected by the illegal clause in a contract.—*Gen. Elec. Co. v. Ft. Deposit, supra; Sales-Davis Co. v. Henderson-Boyd Lumber Co.*, 193 Ala. 166, 69 South. 527; *Weller v. City of Gadsden*, 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981; *Sims v. Ala. Brewing Co.*, 132 Ala. 311, 31 South. 35; *Wadsworth v. Dunnam*, 117 Ala. 661, 23 South. 699; *Trist v. Child*, 21 Wall. 441, 22 L. Ed. 623; *Chapman v. County of Douglas*, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; 2 Elliott on Contracts, §§ 682, 1072, 1073.

(4) If the contract of·employment of the attorney, in the case at bar, was the written contract in question (and under the evidence this was a question for the jury) it is clear that under the Alabama statute (Code, § 3011), and its construction by our court, the attorney's right may be established without the stipulation to the effect that settlement should not be had by the plaintiff without the consent of his counsel. The questioned section of the contract is thus severable, and the other provisions of the contract are not impaired. Section 3011 of the Code reads into such contracts its provisions, and by the expressed terms of the statute forbids to satisfy said suit "until the lien or claim of the attorney for his fees is fully satisfied." If, however, the contract of employment was not that entered into by Perkins and Ivey, but that made with intervener on the 4th day of December, 1913, and was in terms as detailed by intervener and by Perkins, as witnesses on the trial, no question of objectionable clause was presented. However, the exact terms of this later contract was made a jury question by tendencies of the evidence offered by the defendant.

(5) It is further insisted by appellee that section 3011 is unconstitutional as "class legislation." The general rule is that one who assails the classification in a statute must carry the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary.—*Bachtel v. Wilson*, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357; *Lindsley v. N. C. G. Co.*, 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; *Carroll v. Greenwich Ins. Co.*, 199 U. S. 401, 411, 26 Sup. Ct. 66, 50 L. Ed. 246; *Orient Ins. Co. v. Daggs*, 172 U. S. 557, 19 Sup. Ct. 281,

43 L. Ed. 552; *Railway Co. v. Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; 6 R. C. L. § 377; 1 Lewis' Sutherland, Stat. Const. § 203.

(6) Laws may be passed applicable only to the members of a class; where the classification rests upon some disability, attribute, or clasification marking them as proper objects for the operation of such special legislation, if not expressly forbidden by the Constitution.—*Standidge v. Chicago R. Co.,* 254 Ill. 524, 98 N. E. 963, 40 L. R. A. (N. S.) 529, Ann. Cas. 1913C, 65. The general authorities are collected by Mr. Thornton in his recent work on Attorneys (volume 2, p. 1011), as to the validity of statutes creating a lien on causes of action, and he declares that such statutes do not divest the client of his property or property rights, or of the right to control litigation, adding, "Nor are they objectionable as special or class legislation."—*O'Connor v. St. Louis Transit Co.,* 198 Mo. 622, 97 S. W. 150, 115 Am. St. Rep. 495, 8 Ann. Cas. 703; *Wait v. Atchison, T. & S. F. Co.,* 204 Mo. 491, 103 S. W. 60; *Taylor v. St. Louis Merchants' Bridge Terminal R. Co.,* 207 Mo. 495, 105 S. W. 740; *Whitecotton v. St. L. & H. R. Co.,* 250 Mo. 624, 157 S. W. 776; *Yick Wo v. Hopkins,* 118 U. S. 371, 6 Sup. Ct. 1064, 30 L. Ed. 220; *Youngblood v. Birmingham Co.,* 95 Ala. 526, 12 South. 579, 20 L. R. A. 58, 36 Am. St. Rep. 245; *Kansas City Co. v. Flippo,* 138 Ala. 487, 35 South. 457; *Smith v. Woolf,* 160 Ala. 644, 49 South. 395; *Board of Com'rs v. Orr,* 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575.

(7) It may be observed of the statute in question, that it does not except from its operation any person of the designated class, that the class dealt with is a proper object for the operation of such special legislation, and that the classification is founded on distinctions reasonable in principle. The fact that the representation of parties litigant by a counsel may operate to bring attorneys for plaintiffs within the benefit of the attorney's lien statute, oftener than where the lien to be protected is that of an attorney representing the defendant, does not make the statute clearly and acually arbitrary and unreasonable. For illustration, it is noted that under our system of pleading, in a proper case, a defendant may recover a judgment over against the plaintiff, and, in another, both parties may be decreed to have an interest in the subject-matter of the suit. In such cases the statute is applicable alike to the liens of the attorneys of both. It is clear to us that the statute is a general law (*State, ex rel. Collman v. Pitts,*

[Denson v. Alabama Fuel & Iron Co.]

160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79), and that it makes no essentially arbitrary and unreasonable classification (*Bailey's Case*, 161 Ala. 75, 49 South. 886; s. c. 158 Ala. 18, 48 South. 498; *City of Montgomery v. Barefield*, 1 Ala. App. 515, 56 South. 260).

(8) Nor is the statutory lien on the "suit" made dependent on the service of process. The filing of the complaint at law, or the bill in chancery, in the court having jurisdiction of the cause and in a county of the venue, is the commencement of the suit on which the statute fixes a lien.—2 Thornton on Attorneys, § 617; Code 1907, §§ 4853, 3092; *Maverick v. Duffee*, 1 Ala. 433; *Farmers' Oil Mfg. Co. v. Melton*, 159 Ala. 469, 49 South. 225; *Greenwood v. Warren*, 120 Ala. 71, 76, 23 South. 686. When, however, the real time of the beginning of the writ is material and is questioned, it becomes a question of fact for the determination of the jury.—*West v. Engel*, 101 Ala. 509, 14 South. 333; *Huss v. Cent. Co.*, 66 Ala. 475; *Alabama Co. v. Hawk*, 72 Ala. 117, 47 Am. Rep. 403. Under our construction of these statutes, we hold that by section 3011 of the Code the suit is begun and the lien existent when the complaint or declaration or bill is filed in the court having jurisdiction of the subject-matter in controversy and in the county of the venue of the action. The cases of *Fla. C. Co. v. Ragan*, 104 Ga. 353, 30 S. E. 745, and *McClendon v. Phosphate Co.*, 100 Ga. 219, 28 S. E. 152, can have no controlling effect. Mr. Thornton, discussing the question of attorneys charging a lien on a client's cause of action, declares that it "must be determined, in each case, from an examination of the local law."—2 Attorneys at Law, § 615. Looking to the Alabama statute for the extent of such a lien, it will be observed: (1) That the subsection declares a lien for "services rendered;" (2) a lien upon suits, etc., for the "lien or claim of the attorney for his fees;" and (3) a lien upon all suits for the recovery of personal property, etc., "for their fees." Thus clearly does the statute declare the extent of such liens under contracts of employment subsisting between attorney and client. In the absence of contract stipulation, the reasonable value of the services rendered will control.—4 Elliott on Contr. §§ 2866, 2867; Weeks on Attorneys at Law, § 34.

(9) On the trial of an intervention by the attorney enforcing his lien, liability vel non and the amount thereof will be determined as it would have been determined in the prosecution of the

original suit.   The fact of a settlement by the parties to the original suit without the consent of the petitioning counsel is admissible only to show that the client has given an acquittance to the extent of the client's interest in the suit.   The terms of such settlement by the client are immaterial in a suit by the intervening attorney.

(10) In the instant case, intervener admits in his petition the settlement on the part of the plaintiff as administrator.   It was therefore not incumbent on the defendant to defend as to the interest of the original plaintiff.   However, on cross-examination, the plaintiff, Perkins, as a witness for intervener, admitted that on January 27, 1914, witness and intervener entered into a written agreement whereby the said Perkins, as such administrator, was to receive one-half of whatever sum was recovered by verdict of a jury in said cause on the further prosecution of the intervention suit; that is to say, that of whatever sum the court awards intervener, after taking cognizance of the $4,000 already paid to Perkins by the defendant in accord and satisfaction of his claim, the said estate was to receive one-half.   Thus there was presented a tendency of the evidence, making it a jury question, whether the original plaintiff, as administrator, still had an interest in the prosecution of the suit by intervener, and, if so, the extent of such interest at the trial.   In view of this evidence, the trial court committed no error in admitting the contract of settlement made with the defendant by the administrator, and the paper writing evidencing the aforesaid agreement, of date January 27, 1914, between the plaintiff administrator and intervener.

It results, therefore, that intervener's demurrer to defendant's plea No. 8 should have been sustained.

Written charge B, given at defendant's request, is not in harmony with the views we have expressed, and for this reason a reversal should be entered.

(11) Appellee further insists that the judgment should be affirmed, on the ground that the record shows that the defendant was entitled to the affirmative charge because of plaintiff's failure to prove a material averment of his complaint.—*Choate v. A. G. S. R. R. Co.*, 170 Ala. 590, 54 South. 507; *Christian v. Denmark*, 156 Ala. 390, 47 South. 82; *Appling v. Stovall*, 123 Ala. 398, 26 South. 212.   In each count there is the averment that: "Plaintiff's intestate, while in the employment of the defendant

[Denson v. Alabama Fuel & Iron Co.]

and while engaged in the act of performance of the duties of said employment, was killed by an explosion in defendant's coal mine."

On the trial the defendant did not request the general charge, but induced the court to instruct the jury in writing as follows: "A. The court charges the jury that the defendant is not an insurer of the lives and safety of its employees, and unless intervener has reasonably satisfied you by the evidence in this case that the explosion which caused intestate's death was due to some negligence on the part of defendant, or was due to the negligence of some servant for whose acts it is legally responsible, then I charge you that intervener would not be entitled to recover."

In *Clinton Min. Co. v. Bradford,* 192 Ala. 576, 580, 69 South. 4, 6, the court said: "It is now insisted for appellant that there is no evidence in the record tending to sustain the material averment that at the time plaintiff was injured the relation of master and servant existed; but, to the contrary, it is asserted that the evidence undisputedly showed that the plaintiff was a 'contractor.' * * * No suggestion of this nature appears to have been intimated or made during the trial below. On the other hand, the court gave to the jury at the instance of defendant (appellant) its charge numbered 8, wherein rules of law applicable to 'employer' and 'employee' (we quote these terms from the thus given charge) were defined in respect of the measure of care due an 'employee,' by the 'employer,' and the nature of the risks assumed by the 'employee.' Having thus voluntarily induced the court to advise the jury as its charge 8 did, the defendant (appellant) cannot be here heard to urge error as upon the refusal of the court to give effect to an entirely inconsistent theory in the premises.—*Louisville & Nashville Railroad Co. v. Holland,* 173 Ala. 675, 697, 55 South. 1001, and cases therein cited."

See, also, *Travis v. Sloss-Sheffield, etc., Co.,* 162 Ala. 605, 50 South. 108.

The testimony set out in the bill of exceptions affords an inference of the relation of master and servant at the time of plaintiff's death. The affirmative charge was not requested, testing the sufficiency of this evidence, and the trial court could not, ex mero motu, give the general charge.—*Gaynor v. L. & N. R. R. Co.,* 136 Ala. 244, 33 South. 808; *Fidelity & Deposit Co. v. Const. Co.,* 162 Ala. 323, 50 South. 186. The record affirmatively

shows that the case was tried on this theory, and the court instructed the jury, at defendant's request, as to the law of master and servant.  We are of the opinion that an affirmance should not be awarded, as insisted by appellee, on the ground indicated.

It results, from what we have said, that the judgment of the circuit court must be reversed, and the cause remanded.

Reversed and remanded.   All the Justices concur.