C. W. HAHL & CO. v. HUTCHESON, CAMPBELL & HUTCHESON. (No. 7387.)

(Court of Civil Appeals of Texas. Galveston. June 1, 1917. Rehearing Denied June 14, 1917.)

1. PAYMENT ⊃87(1) — DURESS — RECOVERY BACK.

An action to recover money paid under duress being essentially a proceeding in equity, it is essential to plaintiff's right to recover that it appear that defendant ought not in justice and good conscience to retain the money.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 283.]

2. ATTORNEY AND CLIENT ⊃148(2)—COMPENSATION OF ATTORNEY—OWNERSHIP OF JUDGMENT.

Under a contract between attorneys and client, providing that the client should pay one-half of any sum recovered by suit on a claim, after paying all expenses of litigation, the attorneys became equitable owners of one-half of the judgment recovered by them for their client, though the contract contained no words of conveyance.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 353.]

3. ASSIGNMENTS ⊃48 — EQUITABLE ASSIGNMENT—FORMALITY.

An equitable or constructive assignment of a fund does not depend upon any particular form of words, but may be created by any language or act making an appropriation of the fund.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 133.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by C. W. Hahl & Co. against Hutcheson, Campbell & Hutcheson. From judgment for defendants, plaintiffs appeal. Affirmed.

L. B. Moody, of Houston, for appellants. Hutcheson & Hutcheson, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellants, C. W. Hahl & Co., a firm composed of C. W. Hahl and F. A. Connable, against the appellees, Hutcheson, Campbell & Hutcheson, a partnership engaged in the practice of law, and A. R. Anderson, sheriff of Harris county, to recover the sum of $6,457.10, with interest thereon from September 4, 1909, alleged to have been paid appellee Anderson for the use and benefit of the other appellees under duress of property, and the further sum of $750, alleged to be the reasonable attorney's fees and the amount which appellants had agreed and contracted to pay its attorneys for prosecuting this suit. Prior to the trial in the court below C. W. Hahl became the owner of his partner's interest in plaintiff firm, and by amended petition prosecutes this suit individually. As briefly summarized as possible, the facts alleged in the petition, upon which plaintiff's cause of action is based, are as follows:

On January 21, 1908, a judgment was rendered in the district court of Harris county in favor of E. M. Paulson, B. B. Haugan, and Wm. Olander, composing the Southland Immigration Association, against C. W. Hahl & Co., for the sum of $17,500. A motion for new trial filed by C. W. Hahl & Co. was overruled, and in due time an appeal was perfected to this court by said firm. Said cause was affirmed by this court on January 4, 1909, and application for writ of error was refused by the Supreme Court in May, 1909. While the cause was pending in the Court of Civil Appeals, appellee B. B. Haugan transferred his one-third interest in the judgment to his coappellee, Wm. Olander. Thereafter, on September 8, 1908, Olander, for a valuable consideration, assigned and transferred his two-thirds interest in the judgment to J. N. Taub. This transfer was, on the 9th of September, 1908, filed with the papers of the cause and noted in minutes of the court as required by the statute. After the purchase of this two-thirds interest in the judgment by Taub, he and Hahl & Co. entered into an agreement of compromise of said judgment, and Hahl & Co. executed and delivered to him a note for the amount agreed to be paid in compromise of said judgment. While the application for writ of error was pending, the one-third interest of E. M. Paulson was settled and released by Paulson and appellees, Hutcheson, Campbell & Hutcheson.

After the mandate from the Court of Civil Appeals had been filed in the lower court, appellees Hutcheson, Campbell & Hutcheson, who were the attorneys for Paulson, Haugan, and Olander in said suit, caused an execution to be issued on said judgment, and after writing an indorsement on the writ to the effect that one-third of the judgment had been released, they put the execution in the hands of appellee A. R. Anderson, with instructions to collect thereon one-half of the remaining two-thirds of said judgment and pay same over to them. This execution was issued without the consent and over the protest of J. N. Taub, and with full knowledge on the part of appellees that the interests of Haugan and Olander in said judgment had been transferred to Taub, and that he had entered into the agreement of compromise with C. W. Hahl & Co., as before stated. Acting under the direction and instructions of defendants Hutcheson, Campbell & Hutcheson, the defendant Anderson, on July 31, 1909, levied said execution upon lands of plaintiff in Harris county of more than $100,000 in value. Plaintiff, before said levy was made, advised Anderson of all of the facts before stated, showing the want of authority in the other defendants to procure the issuance of said writ, and requested him not to levy upon his property thereunder. Notwithstanding plaintiff's protest Anderson made the levy and advertised the property for sale. In order to prevent the sale of the property under said execution, plaintiff applied to the judge of the Sixty-First judicial district for a writ of injunction restraining defendants from making said sale. This application for injunction was refused on August 3, 1909. The Court of Civil Appeals had then adjourned for the term, and could not meet until October, 1909. Plaintiff had on July 13, 1909, before the issuance of the execution, entered into a contract to convey the lands levied upon under said execution within 60 days from the date of said contract, and had become bound and obligated to convey same with a perfect title. It was impossible for plaintiff to carry out this contract without obtaining a release of the levy, and, as before stated, no relief could be obtained by plaintiff within the time allowed by the contract by appeal from the order of the district judge refusing the injunction. Under these circumstances plaintiff, in order to prevent the great loss and damage that a failure to comply with said contract of sale would have caused him, was compelled to pay to the said Sheriff Anderson one-half of the two-thirds balance due upon said judgment and thus obtain a release of said levy. This money, $6,457.10, was paid under protest and with notification to defendants that plaintiff would immediately file suit against defendants to recover same, together with damages for the wrongful and unlawful levy of the execution and collection of said sum.

In addition to a general demurrer, special exceptions, and plea of res adjudicata, by which the judgment in the injunction suit is pleaded in bar of plaintiff's right to recover in this suit, the defendants' answer, after a general denial, presents the following defenses:

(1) They pleaded that they had and owned an equitable assignment, lien, and charge upon the cause of action and judgment for the amount recovered by them, under a contract with the plaintiffs in the Southland Immigration Association suit, to bring said suit for them upon the basis of one-half interest in the cause of action and recovery, and therefore, as such owners and so interested, they had a right to cause the execution to be issued and to collect moneys due them, and have a right now to keep that which they had obtained.

(2) That, if it be held that the defendants have no equitable title, interest, lien, or charge upon the judgment, or cause of action, and the contract between them and their said clients only operated as a personal debt or promise that clients would pay them out of the judgment, then, when the judgment was obtained, defendants acquired an equitable claim on the same, with which plaintiff, having had express knowledge in writing from defendants of their interest, could not interfere, without plaintiff being guilty of participation in a fraudulent transaction as to these defendants. That, therefore, plaintiff had not come into equity with clean hands, and had no standing in a court of equity to maintain an equitable case upon a situation which was the result of his own wrongful and fraudulent conduct.

(3) That the statutes of the state of Texas declare all conveyances of the character which this one to Taub was, made as it was with the cognizance and under the procurement of Hahl, and for the purpose of defrauding and defeating defendants out of their interest in the judgment, void, and that the defendants, not coming into equity with clean hands, could not in this suit assert any rights or claims arising out of said purported and fraudulent transfer.

(4) That the basis and foundation of this kind of a cause of action is that defendants have money which they ought not in conscience to have obtained or to hold, whereas, the evidence in this case shows, and the jury and court found affirmatively that the defendants were entitled to this sum, either by way of having an interest in the judgment, or by way of being satisfied by payment out of same, and that but for the fraudulent conduct of their client and Hahl they would have received the same without the necessity of process or litigation, and these defendants having received said money into their possession, which in equity and conscience they ought to have had and ought to keep, no court of equity will set in motion its machinery to deprive them of it.

(5) That if the defendants did not have a one-half interest in the judgment, or equitable lien and charge thereon, and only had a debt against Olander and Haugan, still, under the undisputed facts, the plaintiffs in the original suit, Olander and Haugan, had agreed and promised to pay the defendants the said amount out of any recovery made by them, and defendants in good conscience and equity were entitled to said sum, and would have obtained same but for the fraudulent transfer made by the said Olander, with the purpose and intent to defraud Hutcheson, Campbell & Hutcheson, which intent was participated in by Hahl, the plaintiff in this suit, and aided by him, in that he paid Olander $1,250 in money to assist him to make the pretended sale to Taub, so that a court of equity, upon the maxim "Ex dolo malo causa non oritur," which has its counterpart in the legal maxim, "No man can profit by his own wrong," could not allow plaintiff in this suit to assert any rights against the defendants growing out of the said fraudulent transfer.

The trial in the court below with a jury resulted in a judgment in favor of defendants. The evidence shows the following facts:

In April, 1907, William Olander called upon appellees, Hutcheson, Campbell & Hutcheson, with whom he had no previous personal acquaintance, for the purpose of employing them to collect a claim of himself, B. B. Haugan, and E. M. Paulson, doing business under the name of Southland Immigration Association, against C. W. Hahl & Co. After an investigation of the facts, said appellees advised Olander that they would take the case, and he told them that the Southland Immigration Association had no money, and thereupon the following written agreement for a contingent fee was entered into between them:

"State of Texas, County of Harris.

"Know all men by these presents that this memorandum of agreement, this day entered into by and between E. M. Paulson and B. B. Haugan, of Minneapolis, Minn., and Wm. Olander, Bee county, doing business under the firm name and style of the Southland Immigration Association, parties of the first part, and Hutcheson, Campbell & Hutcheson, of Harris county, Texas, parties of the second part, witnesseth: That the parties of the first part have this day employed the parties of the second part to bring and prosecute for them a suit against the firm of C. W. Hahl & Co., of Houston, Harris county, Texas, for a commission due the parties of the first part by the said C. W. Hahl & Co., for the sale of some land in Bee county, Texas, known as the 'Nutt Ranch,' amounting to 10,900 acres, the commission claimed by the parties of the first part of C. W. Hahl & Co. being $2.50 per acre for the said 10,900 acres, and the parties of the first part hereby agree to pay to the parties of the second part one-half of any amount that may be recovered on said claim against said C. W. Hahl & Co., after paying all the expenses of the litigation, and the parties of the second part hereby agree to take charge of said claim of the parties of the first part against C. W. Hahl & Co., institute suit at once, undertake to prosecute the same to final judgment, on the terms above stated of one-half of any amount recovered for their services, and will assist in the collection of any judgment that may be had or obtained by the parties of the first part.

"It is agreed between the parties hereto that in the event the parties of the first part shall fail to secure a judgment against the said C. W. Hahl & Co., that whatever costs may be incur-

red in prosecuting said suit, the same will be borne equally; that is, the parties of the first part pay one-half, and the parties of the second part the other half.

"This agreement executed in duplicate.

"Witness our hands this the 22d day of April, A. D. 1907. [Signed] Southland Immigration Ass'n, per Wm. Olander, Parties of the First Part. Hutcheson, Campbell & Hutcheson, Parties of the Second Part."

This contract was made before the filing of the suit of the Southland Immigration Association against C. W. Hahl & Co., and was never acknowledged by Olander, nor filed among the papers in said case, nor noted on the docket, nor on the minute book, where the judgment in said cause was entered. Thereafter said appellees filed said suit, and on January 21, 1908, judgment was rendered therein in favor of E. M. Paulson, B. B. Haugan, and William Olander, and against C. W. Hahl & Co., for $17,500, from which judgment the defendant therein immediately appealed, under a supersedeas bond. Shortly afterwards said appellees wrote appellant a letter, in which they claimed to be the owners of a one-half interest. By an assignment filed among the papers in said cause on June 15, 1908, and duly noted on the margin of the minute book, Haugan assigned to Olander all of his interest in said suit. On September 8, 1908, Olander assigned to J. N. Taub all of his interest in said judgment, stating that he was the owner of two-thirds of same, which assignment was duly acknowledged and filed among the'papers in said cause on September 9, 1908, and noted on the margin of the minute book. On January 11, 1909, this two-thirds interest in said judgment was compromised between Taub and appellant for $4,250. Thereafter, in February, 1909, said judgment was affirmed by the Court of Civil Appeals, and an application made to the Supreme Court for writ of error. In April, 1909, the Paulson one-third interest in said judgment was assigned to A. E. Connable, and afterwards released by him. Appellees, Hutcheson, Campbell & Hutcheson, joined in the assignment of this one-third interest to Connable. Thereafter, in May, 1909, writ of error was denied by the Supreme Court, and on June 21, 1909, the mandate was filed in the trial court. On July 27, 1909, appellees 'caused the clerk of the trial court to issue an execution under said judgment, and placed an indorsement thereon that one-third of the judgment had been paid and released, and placed same in the hands of the sheriff, and instructed him to collect on said execution one-half of the remaining two-thirds and to pay the same over to them.

Hutcheson, Campbell & Hutcheson were never paid any fee by the Southland Immigration Association or any member of said firm. All of the costs incurred in the suit against Hahl & Co. were paid by Hutcheson, Campbell & Hutcheson; the Immigration Company never having been called upon by them to advance or pay any of said costs. All of the allegations of the plaintiff's petition as to the levy of the execution, suit to enjoin the sale, the fact that plaintiff, in order to secure release of his property from the levy and prevent great loss and damage, satisfied the execution by paying the amount demanded under protest, and immediately brought this suit to recover it back from appellees, are sustained by the undisputed evidence.

The evidence further shows that Hahl, with notice of the claim of Hutcheson, Campbell & Hutcheson to a one-half interest in the judgment, procured the transfer of the judgment from Olander to Taub. Olander came to Hahl to sell him the judgment, and offered to take $3,000 for the interest of himself and Haugan in the judgment, which upon the face of the judgment was a two-thirds interest. Hahl told him he did not have the money to buy the judgment himself, but that Taub had frequently bought judgments against him and that he might buy this one. Olander went to see Taub and after several conferences with him and with Hahl the trade was finally made. Taub offered Olander $2,000 for the two-thirds interest in the judgment, but Olander refused this offer and went back to see Hahl. The further negotiations between these parties, which resulted in the transfer of the judgment, are thus stated by appellant Hahl:

"I stated to Olander that if he (Olander) would accept Taub's offer of $2,000 and sell the two-thirds of said judgment to Taub for said sum, I would give Olander my note for $1,000 to make up the difference between the amount Taub was willing to pay and the amount Olander was willing to take, to which proposition Olander agreed, and went away to close up the sale to Taub, but shortly came back and said that it was all off, as Taub had reconsidered his offer and was unwilling to pay more than $1,750, and thereupon I agreed to give my note to Olander for $250 more, so that Olander might get the $3,000 required by him, to which Olander agreed, and again went away and completed the sale of said two-thirds of said judgment to said Taub. After Olander went away the second time I talked with Taub over the telephone. I did not see Taub in person at all. Over the telephone I told Taub that I would like to have him buy the judgment, if he would, and that if he would agree to give me time, in case the judgment went against me, I would agree to reimburse him for the money he paid, to prolong the time and give me a chance to pay it out. I did not, in that conversation, or in a subsequent conversation, tell Taub that I would give Olander these notes, or either of them, as an inducement to sell the judgment to him."

He further testified:

"I paid $1,250 to Olander to induce him to sell to Taub, but I do not call that working up a trade. I paid that $1,250 as a bonus, in order to get the judgment in the hands of Mr. Taub. I paid this amount of $1,250 to induce the sale to Taub for $1,750 of a $17,500 judgment; that is, a two-thirds interest."

The following issues only were submitted to the jury:

"No. 1. Did Hutcheson, Campbell & Hutcheson and the Southland Immigration Association,

in making their agreement for the bringing and prosecution of the suit, intend that Hutcheson, Campbell & Hutcheson should have a one-half interest in whatever might be recovered by that suit as compensation for their services?

"No. 2. Did J. N. Taub, at the time or before the transfer to him of the judgment, have notice of such facts and circumstances as would arouse the suspicion of an ordinarily prudent man, and which would, in the exercise of ordinary prudence, have caused him to make inquiry as to the purpose for which such transfer was made?"

The verdict answered both of these questions in the affirmative. The evidence sustains both of these findings.

Appellant's first assignment of error complains of the refusal of the court to instruct the jury to find a verdict for plaintiff, and the second assignment complains of the judgment in favor of defendants upon the ground that upon the undisputed evidence plaintiff was entitled to a judgment notwithstanding the findings of the jury. The proposition under the first assignment is as follows:

"It appearing from the evidence that in September, 1908, J. N. Taub became the owner of a two-thirds interest in the Southland Immigration Association suit, which was compromised and settled between appellant and Taub in January, 1909, and that A. E. Connable became the owner of the remaining one-third interest in said suit, and released the same in April, 1909, and that in July, 1909, appellees procured the unauthorized issuance of an execution under said judgment and levied the same upon appellant's property, and that he paid them on September 4, 1909, the sum of $6,-457.10, and that said money was paid under duress of property, he was entitled to recover that amount from appellees, with interest thereon, and the court ought to have so instructed the jury, when requested so to do by appellant."

Under the second assignment this proposition is presented:

"When attorney and client have contracted that the attorney shall have a one-half interest in whatever may be recovered by the suit as compensation for his services, and pending the suit the client compromises with the defendant in the suit for less than the amount of a judgment which has not become final, but has been superseded by an appeal under a supersedeas bond, the amount to which the attorney is entitled is determined and fixed by the amount of the compromise, and not by the amount of the superseded judgment, and Taub as the owner of the Haugan and Olander interests in said judgment, having compromised the same with the defendants therein for the sum of $4,250, the amount to which appellees were entitled could not exceed $2,125, with interest from January 11, 1909, and appellees having forced appellant to pay $6,457.10, he was entitled to judgment against appellees for the difference between the two amounts, with interest from September 4, 1909, and the court ought not, therefore, to have rendered judgment that appellant take nothing herein."

These two assignments present the only two material questions raised by the record. The remaining assignments either present in different forms the questions raised by the first two, or present questions in regard to the admissibility of evidence which we do not regard as material, and, while each of the assignments has been duly considered,

all of them except the first two are overruled without discussion.

[1] The action to recover money paid under duress is essentially a proceeding in equity, and to entitle the plaintiff in such action to recover it must appear that the defendant ought not in justice and good conscience to retain the money. In 30 Cyc. 1303, the rule is thus stated:

"But in order to recover moneys paid under duress, it must be shown not only that there was duress, but also that it was against equity and good conscience for the payee to retain the money."

Under this rule any irregularity or want of legal authority for the method pursued by appellees to obtain the money from appellant would not entitle him to recover it back, if in justice and good conscience appellees are entitled to retain it. Of course, if the means used by appellees to obtain the money were wrongful, and appellant suffered damage thereby, he would be entitled to recover such damage; but no such question is raised by this record. We think the one controlling question in the case is whether, under the contract between Hutcheson, Campbell & Hutcheson and the Southland Immigration Association, they became the equitable owners of one-half of the judgment recovered in the suit of the Immigration Association against appellant. If they were such owners, they are entitled to retain the money they obtained from appellant by the levy of the execution, because the undisputed evidence shows that appellant, after having been notified of their interest in the judgment, actively assisted Olander to procure the purchase of the judgment by Taub in total disregard of appellees' rights therein, and if he could have shielded himself under the plea that Taub, from whom he subsequently obtained a release of the judgment, was an innocent purchaser, he is debarred from such plea by the finding of the jury that Taub was charged with notice of appellees' claim and the purpose and effect of the transfer of the judgment by Olander.

[2, 3] We think the contract above mentioned, construed in the light of the circumstances under which it was made, clearly evidences that the intention of the parties in its execution was to give appellees one-half of the judgment rendered in the suit, and notwithstanding the fact that it contains no words of conveyance of an interest in the cause of action, when the judgment was obtained appellees became the equitable owners of one-half thereof. "An equitable or constructive assignment does not depend upon any particular form of words, but the court of equity constructs the assignment out of the situation of the parties. Any language or act which makes an appropriation of a fund amounts to an equitable assignment of that fund. No particular form of words or form of instrument is necessary." 2 Am. &

Eng. Ency. of Law (2d Ed.) p. 1055. In 5 Corpus Juris, p. 910, it is said:

"Any words or transaction which shows an intention on the one side to assign, and an intention on the other to receive, if there is a valuable consideration, will operate as an effective, equitable assignment" (citing many Texas cases, among them Davis v. State National Bank, 156 S. W. 321).

In 2, Ruling Case Law, § 21, p. 614, is perhaps the best discussion from an editorial standpoint of the question. The editor says: "Since equity disregards mere form, no particular words or particular form of instrument is necessary to effect an equitable assignment. Any language, however informal, if it shows the intention of the owner of the chose in action to transfer it, so that it will be the property of the transferee, will act as an equitable assignment. It has been said that any order, writing, or act which plainly makes an appropriation of a fund or debt may amount to an equitable assignment, and that the true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be the assignee. Thus it has been held that there is a valid assignment in equity whenever the person to whom an obligation is due authorizes its payment to another, either for his own use or for that of some other person, or authorizes any one to receive or hold the moneys, and to apply them to any specific purpose other than for the benefit of the assignor. An assignment may be in parol, or partly in writing and partly oral. If the equitable assignment of a debt is in writing, and the intent and contract of the parties are not fully expressed, it has been held that parol evidence is admissible as in similar cases in reference to written instruments." Moore v. Lowrey, 25 Iowa, 336, 95 Am. Dec. 790.

These general principles announced by the text-writers are fully supported by the opinions of our highest courts, among which we cite the following: Railway Co. v. Ginther, 96 Tex. 295, 72 S. W. 167; Davis & Goggin v. Bank, 156 S. W. 321; Barnes v. Alexander, 232 U. S. 119, 34 Sup. Ct. 276, 58 L. Ed. 530; Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753; Wood v. Casserleigh, 30 Colo. 287, 71 Pac. 360, 97 Am. St. Rep. 138; Clark v. Iron Works, 81 Fed. 310, 26 C. C. A. 425. In our opinion the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.