UNITED STATES FIDELITY & GUARANTY CO. v. LEVY et al.

No. 7598.

Circuit Court of Appeals, Fifth Circuit.

May 24, 1935.

See, also (C. C. A.) 68 F.(2d) 329.

H. H. Grooms and Frank E. Spain, both of Birmingham, Ala., for appellant.

J. Kirkman Jackson, of Birmingham, Ala., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

After many years of contesting its liability in a common-law suit, through two trials and two appeals, appellant, in addition to its legal defenses, claimed an equitable offset against the whole demand. The claimed offset was allowed against the recovery to the extent of the plaintiffs' interest in it. It was denied as to the 20 per cent. fee interest appellees, plaintiffs' attorneys, claimed to have in it by an equitable assignment of and a statutory lien on the cause of action in suit. This appeal is from the judgment in their favor for that interest. Neither the judgment for plaintiffs, nor the offsetting as to their interest is complained of here. We are to decide only whether appellees' equity to have their fee interest satisfied out of the judgment they obtained for plaintiffs is subordinate, or superior to, defendant's equity of offset.

Appellant insists that the District Judge erred in proceeding with the trial of the law cause before hearing the equitable plea, and erred after hearing the plea in refusing to give the set-off effect as to plaintiff's whole demand, including the claimed fee interest. It insists that the statutes of Alabama control. It argues that under the Alabama decisions its statutes give an attorneys' lien, not on the cause of action, but on the judgment, and that the lien is always subordinate to set-offs available against a client's judgment. It insists that since appellant's equitable right to set off its claim against Union's demand accrued to it prior to the entry of judgment, it wiped plaintiff's demand out, leaving nothing for plaintiff to go to judgment on, and therefore nothing to which appellees' fee claim could attach.

Appellees urge here what they successfully urged below, that their fee contract, and the work they did under it, created an equitable lien upon or effected an equitable assignment of, the cause of action, and that the applicable statutes of Alabama, section 6262 of the Code of 1923, gave them a statutory lien on the suit. That when they acquired their interest in it plaintiff's demand was not subject to set-off, either legal or equitable, both because the claim of appellant against Union had not then in law accrued, and because if it had accrued, there was no legal right to set-off, because the claim was entirely independent of the one in suit, and no equitable right, because Union was then solvent. That when the equitable right of set-off

arose upon the accrual of Union's debt to appellant on the bond, and Union's subsequent insolvency, appellees' equity in Union's demand had already become fixed as prior in time and in right, to appellant's equity of set-off.

There is no dispute about what occurred or as to the order of the occurrences. A brief chronological statement will, we think, at once make sharply clear the precise point to be decided here, and what the decision should be.

On July 27, 1928, Union Indemnity Company, hereafter called Union, went surety for Bessemer Construction Company on a public road construction contract. On August 7, 1928, United States Fidelity & Guaranty Company, hereafter called appellant, went surety for Flowers, a subcontractor to whom Bessemer had sublet the whole project. On or about February 25, 1929, Flowers defaulted, and appellant was notified. On April 23, 1929, Bessemer transferred to Union its claim on Flowers' bond. In a short while Bessemer defaulted, and Union called on to, did, complete the project. A dispute having arisen between Union and appellant as to the latter's liability on Flowers' bond, Union, in July, 1930, employed London, Yancey & Brower, attorneys at law, to sue appellant on the bond, their compensation to be 20 per cent. of the amount found to be due. Appellant was sued August 26, and served August 28, 1930.

On February 26, 1931, verdict and judgment went against appellant. Reversed on appeal,[1] and tried again September 9, 1932, appellant had verdict and judgment in the cause. On January 15, 1933, Union went into the hands of receivers, who perfected an appeal and secured a reversal of[2] this judgment. After this reversal, appellant, on March 19, 1934, filed an equitable plea in the suit. This plea asserted an indebtedness of Union to appellant arising out of a matter entirely independent of the matter in suit,[3] it alleged Union's insolvency and appellant's inability to enforce its claim in an independent action at law, and advanced it as an equitable set-off against Union's demand. The prayer was that Union's suit be stayed pending the determination of appellant's set-off; that the plea be taken as an equitable defense to the suit, and that upon a hearing an equitable set-off be established in an amount sufficient to liquidate Union's demand. The court, reserving the determination of the special plea until after the verdict of the jury on Union's demand, and the entry of judgment until the determination of the special plea, overruled the motion to stay. On March 21, 1934, there was a verdict for plaintiff for $27,998.24. On March 22, 1934, appellees, London, Yancey & Brower, intervened to assert their fee interest. Motions to strike and demurrers directed to the special plea and to the intervention were overruled. On July 21, 1934, the issues on the plea and on the intervention

[1] U. S. Fidelity & Guaranty Co. v. Union Indemnity Co. (C. C. A.) 56 F.(2d) 147.

[2] Levy v. U. S. Fidelity & Guaranty Co. (C. C. A.) 68 F.(2d) 329.

[3] This demand arose in this way. Effective July 29, 1929, appellant, already under a $100,000 primary and a $100,000 First Excess Fidelity Bond to Bache & Co., executed a Second Excess Bankers' and Brokers' Blanket Bond in the sum of $300,000. On August 30, 1929, Union Indemnity Company, which in 1920 had effected a reinsurance treaty with appellant, accepted a proposal for reinsurance of the Second Excess Bond to take effect as of the date of that bond. On or about July 12, 1932, appellant received from Bache & Co. first notice of loss under its bonds. A special audit of the accounts of defaulting employees revealed a total shortage of $658,000. This showed a shortage up to July, 1929, of $270,000, between that date and August 22, 1930, an increase of $150,000 while the balance of the shortage occurred thereafter and up to June 8, 1932. On August 22, 1932, appellant paid Bache & Co. the full penal sums of the bonds. The reinsurance agreement between Union and appellant provided: "The Reinsurer's proportionate share of a loss under any bond reinsured hereunder as evidenced by its acceptance and of costs as hereinafter defined shall be paid to the Reinsured upon proof of such loss and costs and proof of the payment thereof by the Reinsured, and upon delivery to the Reinsurer of copies of all essential documents concerned with such loss and costs and the payment thereof."

On July 16, 1932, appellant made proof of loss to Union. It was agreed that Union owed $30,000. It was claimed that it owed more. Unable to settle the dispute, it was agreed that Union should pay $30,000, the claim for the excess to be arbitrated. On December 29, 1932, Union sent appellant its draft for $30,000, but, on account of the receivership proceedings, the draft was never paid.

coming on to be heard before the court on stipulated facts,[4] the court rendered its final judgment for interveners for $5,757.88. This judgment was arrived at in this way: Plaintiffs were awarded judgment on the verdict for $27,998.24 and appellant was allowed to offset its claim against the judgment except as to the 20 per cent. attorneys' fee interest.

Appellant argues that the whole manner of proceeding was erroneous and produced erroneous results. It argues that by the statute law of Alabama an attorney's lien attaches only to the judgment, and an attorney takes his lien subject to all set-offs to which the judgment is subject. It insists that if the plea of set-off had been heard first, it would have snuffed Union's demand out, leaving nothing to go to judgment, and therefore nothing to which the fee interest could attach. Appellees deny that the statute law of Alabama is as claimed by appellant. They insist that the lien the statute gives is in terms upon both judgment and suit, and that the lien the statute gives on the suit primes set-offs against the cause of action arising after the lien just as a lien on the judgment would prime set-offs, the right to which accrued after their obtaining. Portneuf-Marsh Valley Canal v. Brown, 274 U. S. 630, 47 S. Ct. 692, 71 L. Ed. 1243; Sheffield v. Preacher, 175 Ga. 719, 165 S. E. 742, 84 A. L. R. 1159; note, 34 A. L. R. 331; Warfield v. Campbell, 38 Ala. 527, 82 Am. Dec. 724; Mosely v. Norman, 74 Ala. 422. They argue further that the statute aside, the case is one of general equitable cognizance in which they stand as equitable assignees and lienors, holding equitable claims acquired prior to appellant's equity of offset, and therefore superior to it. They insist that while it is undoubtedly true that they took their assignment of and lien on Union's demand subject to all defenses appellant then had against it, including all legal set-offs, arising or growing out of that claim, and all equitable set-offs then existing, they did not take it subject to equitable set-offs accruing or arising in appellant's favor after their rights had become fixed. It is settled law, they say, that an equitable assignee of or lienor on a claim or judgment takes it free from the offset of claims acquired or accruing afterward against the assignor, takes it subject only to those existing when the assignment was made, the lien fixed. They insist that appellant's right of offset did not arise until long after appellees' interest had become fixed. They point out that though the shortage had occurred before Union's suit was filed, Union's liability to appellant did not accrue under the reinsurance agreement until some years afterward. They point out, too, that if it had accrued, this would not better appellant's position, for Union was solvent when appellees' rights attached, and its insolvency, the basis of appellant's right of offset here, did not occur until long afterward.

We think it quite clear that appellees are right in both of their contentions, and that the decree should be affirmed. We think it cannot be doubted that the contract they had for their fee, and what they did under it, operated to fix an equitable charge in their favor on the cause of action, a charge which some courts treat as in the nature of an equitable assignment, some an equitable lien. Hahl & Co. v. Hutcheson, Campbell & Hutcheson (Tex. Civ. App.) 196 S. W. 262; Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530; Geddes v. Reeves Coal & Dock Co. (C. C. A.) 20 F.(2d) 48, 54 A. L. R. 282; Woodbury v. Andrew Jergens Co. (C. C. A.) 69 F.(2d) 49. We think, too, that one holding such an interest has an equity in the cause of action and the recovery under it prior to that of the defendant in the judgment to exercise a right of set-off accruing to him after the attorney's interest had attached.

Whatever of confusion exists in the authorities as to what constitutes an equitable assignment, and as to whether a particular contingent fee contract does or does not operate as an equitable assignment or give rise to an equitable lien, and there is considerable confusion, In re Interborough Consolidated Corporation (C. C. A.) 288 F. 334, 32 A. L. R. 932 and note, p. 952; Chattanooga Sewer Pipe Works v. Dumler, 153 Miss. 276, 120 So. 450, 62

---

[4] These show the employment of attorneys for an interest in the recovery, their devoted and effective services in obtaining it, and that they had received no compensation whatever or return for their out of pocket expenses and outlays in connection with the long litigation. They show too the nature and time of accrual of the offset and that Union was at the time of the hearing a nonresident of Alabama and insolvent.

A. L. R. 999; Jacobsen v. Miller, 34 A. L. R. 323 note; Nichols v. Orr, 63 Colo. 333, 166 P. 561, 2 A. L. R. 449; High Point Casket Co. v. Wheeler, 182 N. C. 459, 109 S. E. 378, 19 A. L. R. 391, it is quite clearly settled that wherever the effect of the contract is to equitably assign or create a lien upon the cause of action, or subject-matter of the suit, that lien will be respected and enforced in equity. Rawleigh Co. v. Timmerman, 205 Ala. 105, 87 So. 372; Beecher v. Peter A. Vogt Mfg. Co., 227 N. Y. 468, 125 N. E. 831; Graeber v. McMullin (C. C. A.) 56 F.(2d) 497; Hahl v. Hutcheson, supra; Scott v. Kirtley, 113 Fla. 637, 152 So. 721, 93 A. L. R. 661 and page 667 note. It is also clear that wide, full, and effective as is the right of a defendant to an equitable set-off where it is equitable that the set-off be allowed, that is, where there are no prior equities, set-off will be denied where, invoked as here as to a demand accruing or acquired after a valid equitable assignment or charge has arisen, it is inequitable to allow it. North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 396, 14 S. Ct. 710, 38 L. Ed. 565; Bank of United States v. Braverman, 259 N. Y. 65, 181 N. E. 50, 82 A. L. R. 659. Appellant in effect admits the correctness of these principles. Its argument is that they have nothing to do with the decision here, because that is controlled by the Alabama statute which, they say, furnishes the exclusive basis for the rights of attorneys, superseding all common-law and equitable liens.

█ █ We do not agree with appellant that the statute operates to exclude equitable assignments or liens. We think it supplements, it does not exclude, them. Rawleigh Co. v. Timmerman, supra. But we think we may assume appellant's position to be right, and still the judgment must stand, because under the statutes of Alabama as they now stand, the common-law lien has been greatly enlarged to take effect, not only on all fruits of recovery, including lands, but on the cause of action or claim itself from which the fruits spring. Fuller v. Lanett Bleaching Co., 186 Ala. 117, 65 So. 61; Denson v. Alabama Fuel & Iron Co., 198 Ala. 383, 73 So. 525; Alabama Fuel & Iron Co. v. Denson, 208 Ala. 337, 94 So. 311; Gulf States Steel Co. v. Justice, 204 Ala. 577, 87 So. 211; Alabama Produce Co. v. Smith, 227 Ala.

330, 150 So. 148. Under this statute attorneys' liens stand in the same case to suits as they do to judgments. They stand, in short, to suits as they stood at common law to judgments, subordinated to proper offsets existing against the suit when the liens were acquired, just as they were at common law to proper offsets then existing against the judgment. They are superior to offsets acquired against the suit after the liens have attached, just as they were superior at common law and are now, by statute, to after-acquired offsets asserted against the judgment.

Appellant's reliance on Adams v. Alabama Lime & Stone Corp., 221 Ala. 10, 127 So. 544, 549, 550, as holding that the Alabama statute gives the attorney a lien, not on the suit, but only on the judgment, is not, we think, justified. That question was not presented or discussed; the opinion, treating the claim as for a lien upon the judgment, held that the statute has not changed the rule as to liens on judgments. In stating the case, it was treated as one in which the charge claimed was on the judgment, and, in deciding it, it was said: "We do not think this settled rule, declaring in effect that the attorney's lien on a judgment rises no higher than the judgment itself at the time of its rendition, has been changed by our statute." Appellees in this case do not claim to the contrary of this; they claim that their lien was on the suit as well as on the judgment. In addition, the opinion in the Adams Case treats the attorney's lien as having become fixed after the set-off had accrued, the court saying: "It could hardly be supposed the attorney's lien on property is made to displace existing liens or equities therein." Appellees here concede that if appellant's right of set-off had been in existence when they took their lien, they must have taken subject to it.

█ There was no error in treating the plea as in effect an equitable action to prevent the entry and collection of the judgment until defendant's right of offset could be established. The District Judge was right, since appellant did not admit the justness of Union's demand, in first trying that demand to the jury. He was right, too, after the verdict, in allowing the set-off as against plaintiffs' interest and denying it as against appellees'.

The judgment was right. It is affirmed.