**SHUSTER v. HELVERING, Com'r of Int. Rev.**

**No. 191.**

Circuit Court of Appeals, Second Circuit.

July 16, 1941.

---

Sidney A. Gutkin, of Newark, N. J., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up upon a petition to review an order of the Board of Tax Appeals, assessing a deficiency against the taxpayer in his income tax for the year 1933; the only question is whether he received as ordinary income the amount which the Commissioner added. The stipulated facts were as follows. The taxpayer was president of a publishing company from 1916 to 1933, under a contract which entitled him to twenty per cent of its earnings. He and the company disagreed as to how much was due him up to December 31, 1926, and on June 11, 1928, they composed their difference by a contract in which he released all past claims in consideration of the company's promise to pay him $50,-000 "at its convenience, within two years" after June 11, 1928, "with interest" from January 1, 1927, "and the further sum of $10,000 per annum" in quarterly payments until September 30, 1937, the day when his contract of employment expired; the quarterly payments "to be charged and paid only out of the net earnings of the then current year." Before 1933 the company had paid the $50,000 agreed upon and the quarterly payments for all years up to 1933. The taxpayer's practice was to draw upon the company according to his needs; and at the end of each year if his drafts had not exhausted his credits (both his percentage and the quarterly payments) the company would pay him the deficiency; if, on the other hand, his drafts had exceeded his credits, the overdraft was treated as a loan to him, and carried over to a separate account on the books under the caption, "W. Morgan Shuster, Loan Account," on which interest was charged. During the years 1931 and 1932 his overdrafts had amounted to nearly $40,000.

In the early part of 1933 the company decided to consolidate with another house and found it necessary to discharge its obligation to the taxpayer. Since the quarterly payments under the agreement of June 11, 1928, ran until September 30, 1937, he stood to earn $50,000 more than he had yet received, provided the company's earnings should prove enough for that purpose. The parties settled the account between them by crediting the taxpayer with the full face of the future quarterly payments, $50,000, together with his share of the profits up to the end of May, 1933, when the company closed its business; and by debiting him with his overdrafts for 1931 and 1932 and his drafts for the first five months of 1933. This resulted in a payment to him of about $4,000. The Commissioner included the credit of the future quarter-

ly payments as part of the taxpayer's income for 1933, and the Board affirmed the resulting deficiency. The taxpayer says first that the overdrafts in 1931 and 1932 were anticipations of future quarterly payments, and should have been included in his income for those years. Next, and as an alternative, he says that, since the contract of June 11, 1928, was given as consideration for the release of his claims, the property then received—the contract itself—was income to be appraised and included in that year's return. Finally, he says that the tax upon the gain received in 1933 upon the cancellation of that contract should have been limited to twelve and one half per cent under § 101 (a) of the Revenue Act of 1932, because it resulted from the sale or exchange of a "capital asset," as defined by § 101 (c) (8), 26 U.S.C.A. Int.Rev.Acts, pages 504, 505.

To answer the last two arguments first, it is enough to say that they rest upon the assumption that a compromise by which an obligor binds himself to make future payments, must be treated like property given in satisfaction of an accord; the contract being "property" like a chattel. No word is more loosely used and it is easy enough to find authorities speaking of contracts as "property," but the consequences of so treating them for purposes of the income tax are absurd. It would follow for instance that all future payments which should become due under a contract of employment must be charged at once at their discounted value; so too of a lease, or of any other contract providing for serial payments. To argue that all these are income as soon as the obligor becomes bound, especially when the taxpayer, as here, keeps his books on a cash basis, is so fantastic as to deserve no discussion; it contradicts the fundamental notion that income is "realized" gain, and would incidentally be unworkable in practice, for substantially all such payments are conditional in obligation, as were the quarterly payments in the agreement of June 11, 1928.

The taxpayer's other argument depends upon a question of fact: Were the overdrafts of 1931 and 1932 loans, or were they advances upon future quarterly payments? If they were loans, obviously their avails were not income for the years in which they were paid, and the credits allowed to pay them were income in the years in which these were made. The taxpayer, the company's president, was certainly chargeable with notice that they were carried on the books as loans; and indeed they could not have been anything else unless the parties had agreed to anticipate the quarterly payments. There is nothing to suggest such a modification of the agreement, and besides, the company had never promised absolutely to pay them—they were conditional upon its earnings. This position is therefore devoid of any support in the evidence.

Finally, the taxpayer asks us to remand the case to the Board so that he may prove—what he did not at the time—that he was insolvent in 1933 and that the cancellation of his debts was not income. For this he relies upon Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. ——. That case did not hold that we might reverse the Board because of an error not appearing in the record, though it did hold that when an error appeared in it, we might do so, though nobody had noticed the error below. Here there was no error, and if the taxpayer is entitled to any relief, the Board itself must grant it. It may be understood that our order of affirmance will not preclude it from entertaining such an application; but this is not to be taken as any indication that we think it should do so.

Order affirmed.