## ANSORGE v. COMMISSIONER OF INTERNAL REVENUE.
### No. II.

Circuit Court of Appeals, Second Circuit.
Feb. 9, 1945.

Alex M. Hamburg, of New York City (Charles H. Tuttle, Alex M. Hamburg, and Martin C. Ansorge, all of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to Atty. Gen., for respondent.

Before CHASE, HUTCHESON, and FRANK, Circuit Judges.

HUTCHESON, Circuit Judge.

The commissioner determined that sums the taxpayer had received in the tax year for services as an attorney were taxable as ordinary income and not as capital gains. The Tax Court, in a reported opinion,[1] fully setting out the facts[2] as they were

---

[1] 1 T.C. 1160.

[2] As important here, they are:

The petitioner is an attorney, residing and practicing his profession in the State of New York. On Nov. 18, 1932, one DeLuca by an instrument in writing, retained the petitioner as his attorney in fact and attorney at law to represent him in the matter of recovery because of the expropriation of contracts for construction and delivery of two ships by the United States Shipping Board Emergency Fleet Corporation in 1917, the instrument reading as follows:

"Naples, Italy, the 18th day of Nov., 1932.

I, Carlo deLuca, of Naples Italy do hereby retain Martin C. Ansorge, of 141 Broadway, Borough of Manhattan, New York City, as my attorney in fact and attorney in law, to collect, bring suit, petition or otherwise to represent me in connection with any and all claims and demands, legal or equitable, or bills or petitions for relief to the Congress of the United, States, or otherwise, which he, the said attorney, may deem advisable by reason of any matter or matters referred to in a suit heretofore brought by me in the United States Court of Claims, entitled 'Carlo deLuca v. United States of America', Docket Number K-309, or any other matters connected therewith, and I hereby authorize the said Martin C. Ansorge to name and appoint such agents, attorneys and/or assistants as he may deem advisable; and I hereby consent and agree that of any amount collected by reason of said claim, demand, petition, bill in Congress, or otherwise, or by a settlement or compromise thereof, said attorney may retain Forty Percent (40%) as full compensation for services, fees and expenses, including the services, fees and expenses of any such agents, attorneys or assistants, it being understood that such Forty Percent (40%)

stipulated, affirmed that determination. Petitioner, here, insisting that the decision was wrong, urges upon us that the substance of what occurred is this: that DeLuca, owning a capital asset, a claim for just compensation, so contracted with petitioner as to make him co-proprietor, to the extent of forty percent of the amount to be received upon the claim, and as a result of such contracting, petitioner became entitled to return as capital gains the amount he received for his services. We do not think that this is what in fact occurred. We cannot agree that what petitioner received for his services can be treated as capital gains.

■ The most cursory examination of the briefs and record makes it entirely clear that this is another of those cases in which "as long as the matter to be considered is debated in artificial terms there is danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied." [3] A more complete study shows that the effort to so debate it here has but darkened counsel. Obligated, if he would prevail, to succeed in investing with the attributes of capital gains what on its face appears to be merely ordinary income, compensation for services rendered as an attorney, and with the attributes of an assignment, a contract for fees contingent upon the successful prosecution of a claim against the United States, petitioner finds himself hard put to it in the exigencies of his situation to hold his course. To

shall be in full compensation for all such services, and that no fee shall be charged if no collection or settlement be obtained, and the said fee of Forty (40) Percent shall be and the same hereby is secured to my said attorney by a lien on any amount recovered, and I hereby assign to my said attorney, as his fee, Forty Percent (40%) of the amount of any such settlement or recovery.
(signed) Carlo deLuca (L. S.)"
DeLuca had previously made a settlement of his claims, but had brought a suit in the United States Court of Claims to set aside the settlement. A demurrer had been sustained by the Court of Claims on the ground that the facts stated did not show that the settlement had been brought about by coercion.

Through the efforts of the petitioner and attorney's agents and assistants appointed by the petitioner, pursuant to the power of attorney of Nov. 18, 1932, Congress passed a private act authorizing suit by DeLuca in the United States Court of Claims and decree against the United States for just compensation suffered through the acts of the United States Shipping Board Emergency Fleet Corporation; and the petitioner instituted such action in the Court of Claims. The suit was filed October 20, 1934, and was entitled Carlo DeLuca v. The United States of America. The petition was signed "Carlo DeLuca by Martin C. Ansorge, attorney for claimant". Among the allegations of the petition was the following: "Claimant is the sole owner of the claim presented herein; no assignment or transfer of said claim, or any part thereof, or interest therein has been made * * *." The petitioner verified the petition, the verification including the statement that the petition-

er "knows the contents of this petition and the same are true". A decree was secured on Dec. 7, 1936, against the United States in the amount of $1,615,-329.32, and that amount was paid by check upon the Treasury of the United States on or about June 15, 1937. The check was endorsed by DeLuca and delivered to a trust company in New York and disbursements were made therefrom, on DeLuca's order, to the former attorneys, to the petitioner, and to others employed by him. The petitioner received $161,946.41, giving a receipt reciting that the amount received "represents payment in full of my claim for services, disbursements, etc. to date in the matter of Carlo DeLuca v. The United States". The remainder of the 40 per cent provided for the petitioner in the instrument from DeLuca of November 18, 1932, was paid to petitioner's assistants, agents, and attorneys, as such instrument authorized.

In his Federal income tax return for the year 1937 the petitioner reported income of $159,828.36, as the net amount received by him, reciting: "On November 18, 1932, under a written contract received an assignment of a certain part of the proceeds of two contracts owned by one Carlo DeLuca". Explaining the view that the amount was received as capital gain by virtue of an assignment of a part of DeLuca's contracts, held by petitioner from November 18, 1932, to June 15, 1937, over two years and not over five years, he reported as taxable 60 percent thereof, amounting to $95,-897.02. The Commissioner determined that the entire $159,828.36 was taxable as ordinary income and not capital gain.

[3] Guy v. Donald, 203 U.S. 399, 406, 27 S.Ct. 63, 64, 51 L.Ed. 245.

bring his compensation for services as a lawyer within the definition of capital gains, he must somehow, though he received it as a fee, and the fee was not earned and he was not entitled to receive anything until his efforts had been crowned with success, make it appear that what he got was not payment to him for personal services, but the proceeds of a sale or exchange of an interest in the claim which he had become the owner of many years before. While to bring his contract within the definition of an assignment he must somehow, in face of the fact that it deals with a claim against the government and of the affidavit he caused to be filed in the Court of Claims, that his client was sole owner, make it appear that its effect was from and after its execution to vest petitioner with ownership of a part of the claim. In his first brief, petitioner boldly asserted that the claim was not against the United States but against the Emergency Fleet Corporation, and that the assignment of the claim was therefore not within the prohibition of Revised Statutes, Sec. 3477, 31 U.S.C.A. § 203. Citing Hawaiian Gas Products v. Commissioner, 9 Cir., 126 F. 2d 4, in support of his position that the claim to just compensation was a capital asset in DeLuca's hands, and Commissioner v. Hopkinson, 2 Cir., 126 F.2d 406, to the effect that the assignment to him made the proceeds when collected capital gains in his hands, he bore down heavily on the contract as an assignment of part of the claim. In his reply brief, however, confronted with the inconsistency between the affidavit in the Court of Claims [4] and his insistence that the contract was an assignment which made him co-proprietor with DeLuca, petitioner gave the matter quite a different slant. On page 10 of this brief, he says: "The instrument did not purport to assign any interest in the claim as such, but in a part of the proceeds. * * * Petitioner has never claimed to be the owner of the cause of action." Notwithstanding, however, this disclaimer of ownership in the claim, petitioner in the reply brief seems to insist that he had some kind of ownership in the proceeds as distinguished from the claim itself which made the proceeds capital gains when received. This will not at all do. The instrument was either an assignment of the claim itself or it was merely a contingent fee contract. This is the teaching of Fairbanks v. Sargent, 104 N.Y. 108, 9 N.E. 870, 6 L.R.A. 475, 58 Am.Rep. 490, cited by appellant and of similar cases dealing with claims by attorneys, that their contracts for fees gave them an interest in the subject matter of the litigation.[5] Assuming without deciding, though, when the nature of the sums petitioner received and the limited scope of the capital gains section are considered,[6] the assumption is not an easy one to make, that if petitioner's contract effected a valid assignment of a part of the claim, his compensation could be returned not as ordinary income but as capital gains, it is quite clear that in order to prevail, petitioner must at least show that it did. For it is only by treating the amounts petitioner received as a part of a claim he owned rather than as payment to him for services rendered, and by assuming that this treatment would make them capital gains, that petitioner can escape returning the sums as ordinary income.[7] But the record leaves in no doubt that the claim was against the United States, and it is the law that such claims may not be assigned in whole or in part.[8] This being so, petitioner stands here with nothing but a payment to him for services rendered. under a contingent fee contract, which was received, and must be returned, as ordinary income. The Tax Court was right. Its judgment is affirmed.

[4] "Claimant is the sole owner of the claim presented herein; no assignment or transfer of said claim, or any part thereof, or interest therein has been made * * *".

[5] Cf. C. W. Hahl & Co. v. Hutcheson, Campbell & Hutcheson, Tex.Civ.App., 196 S.W. 262; United States F. & G. v. Levy, 5 Cir., 77 F.2d 972 and cases cited.

[6] Dobson v. Commissioner, 321 U.S. 231, 64 S.Ct. 495; Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310.

[7] Escher v. Commissioner, 3 Cir., 78 F.2d 815; Beals' Estate v. Commissioner, 2 Cir., 82 F.2d 268; Doyle v. Commissioner, 4 Cir., 102 F.2d 86; Sutton v. Commissioner, 10 Cir., 95 F.2d 845; Shuster v. Helvering, 2 Cir., 121 F.2d 643. Cf. Saenger v. Com'r, 5 Cir., 69 F.2d 631.

[8] Sec. 3477 R.S.; 31 U.S.C.A. § 203; United States v. Gillis, 95 U.S. 407, 24 L.Ed. 503; Nat'l. Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116.