*Decisions will be entered under Rule 50.*

GLENN E. ALEXANDER AND MARGARET Y. ALEXANDER, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72451–72453, 79734–79737. Filed July 29, 1960.

---

[1] The following proceedings are consolidated herewith: Creston H. Alexander and Marian M. Alexander, Docket No. 72452; Charles E. Dimit and Helen Mae Dimit, Docket No. 72453; Estate of Euna M. Alexander, Deceased, Creston H. Alexander, Independent Executor, and Clyde H. Alexander, Individually, Docket No. 79734; Charles E. Dimit and Helen Mae Dimit, Docket No. 79735; Creston H. Alexander and Marian M. Alexander, Docket No. 79736; and Glenn E. Alexander and Margaret Y. Alexander, Docket No. 79737.

*Glenn E. Alexander,* pro se.

*Leland E. Fiske, Esq.,* and *Cecil L. Smith, Esq.,* for the petitioners.

*Carswell H. Cobb, Esq.,* for the respondent.

768

**OPINION.**

BLACK, *Judge:* We shall consider the issues in the same order in which the facts pertinent to each are set forth in our Findings of Fact.

*Issue 1. Royalty Payments as Ordinary Income or Long-Term Capital Gain.*

The first issue presented is whether payments received by petitioners during the years in issue on overriding royalty interests received on the sale of their stock in Corpus Christi are taxable as ordinary income subject to depletion or as long-term capital gain. Petitioners, on their income tax returns, treated these payments as ordinary income subject to 27½ per cent depletion. They now claim that they erred in so doing and that they should have treated the payments as deferred payments made on the balance due on the purchase price of their stock in Corpus Christi and that the gain should be treated as long-term capital gain and not as ordinary income.

This same question was raised on essentially the same facts by one of the other shareholders of Corpus Christi before the Court of Claims. *Warren* v. *United States*, 171 F. Supp. 846, certiorari denied 361 U.S. 916. That case was decided adversely to the taxpayer. The stipulated evidence on the issue in this Court is a

transcript of testimony and copies of exhibits offered in the *Warren* case before the Court of Claims.

Gain on the sale or other disposition of property is measured by "the excess of the amount realized therefrom over the adjusted basis." Sec. 111(a), 1939 Code. "The amount realized" is "the sum of any money received plus the fair market value of the property (other than money) received." Sec. 111(b), 1939 Code. The Court of Claims held, and we agree, that the overriding royalty interests which the stockholders of Corpus Christi received constituted property. Petitioners agreed to a fair market valuation of the interests in settling their tax liabilities for 1941. There is no reason to believe that they could not have been sold for that amount. We are well convinced that they could have been sold for the amount of valuation fixed by the revenue agent. The royalty interests later proved to be much more valuable than the Internal Revenue Service fixed in 1942, when petitioners' tax liabilities for sale of their stock to Chicago in 1941 were determined and agreed upon. However, we see no reason why petitioners should complain as to that fact. So far as we can see the fact that the value attributed to these royalty interests in 1941 was too low has nothing whatever to do with the issue we have here to decide. Although petitioners have offered extensive arguments why we should not reach the same result as that of the Court of Claims, we are not convinced by their arguments. We hold, therefore, that the payments received by petitioners on their overriding royalty interests are taxable as ordinary income subject to the 27½ per cent depletion allowed by law.

## *Issue 2. Deductibility of Bad Debt Losses.*

The second issue presented is whether Creston, Glenn, and Charles may deduct as business bad debts under section 166(a)(1) of the 1954 Code,[2] or must deduct as nonbusiness bad debts under section 166(d)(1),[3] certain loans and payments on guaranties as set forth in our Findings of Fact. As stated in the statutory notice to Glenn for 1954, the respondent "determined the $14,000.00 deduction claimed on your 1954 return as a bad debt under section 166(a) of the Internal Revenue Code of 1954 is allowable as a nonbusiness bad debt, deductible as a short-term capital loss under section 166(d) of the

---

[2] SEC. 166. BAD DEBTS.
 (a) GENERAL RULE.—
 (1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

[3] (d) NONBUSINESS DEBTS.—
 (1) GENERAL RULE.—In the case of a taxpayer other than a corporation—
 (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
 (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.

Code." Similar statements appear in all of the notices disallowing the deductions involved in this issue. At trial, counsel for respondent stated this issue in approximately the same terms. The stipulations filed by the parties contain numerous references to "loans" made by Creston, Glenn, and Charles and others. On brief the respondent urges that many of these loans, and the debts arising upon payment of guaranties of loans, were in fact contributions of risk capital. Such contention is "inconsistent with his own determination as disclosed in the deficiency notices." *Vincent C. Campbell*, 11 T.C. 510, 511. We reject respondent's contention that the amounts in question were capital contributions and not loans.

The stipulation contains much matter dealing with promotional efforts, investments, loans, and guaranties of loans made to various corporations in which Creston, Glenn, and Charles held the controlling stock interests. Respondent urges that the petitioners may not claim these activities as establishing their own business, citing *Charles G. Berwind*, 20 T.C. 808, affirmed per curiam 211 F. 2d 575. In the *Berwind* case, where we held against the taxpayer, we pointed out that, "He does not contend that he was in the trade or business of promoting, organizing, financing, or lending money to corporations, only that his trade or business is being an officer and director in various corporations." We agree with respondent that the businesses of corporations which petitioners controlled are not the businesses of the petitioners and such activities have not been accorded any weight in reaching our decision as to whether Creston, Glenn, and Charles incurred business or nonbusiness bad debt losses. Similarly, we have not included in our considerations loans and stock purchases made by Creston, Glenn, and Charles as trustees or guardians of their children, for we are not satisfied that such loans and purchases were their own activities, nor that the children were members of the asserted "Alexander group."

The issue of whether losses are business or nonbusiness bad debts is a factual question. Cf. *Giblin* v. *Commissioner*, 227 F. 2d 692, 697. In the *Giblin* case the court said: "We recognize the fact that the question whether the activities of a taxpayer constitute carrying on a trade or business is largely one of fact, the solution of which 'requires an examination of the facts in each case.' [Citing authorities.]" Many of the cases cited on brief by respondent are distinguishable on their facts because they involve contributions of risk capital to protect investments, attempts to confuse losses or businesses of corporations with losses or businesses of individuals, or attempted deduction of loans not related to the business alleged. Such issues are not presented in the instant case.

The real question that remains here for decision is whether the individual activities of Creston, Glenn, and Charles, as disclosed

by the record and contained in our Findings of Fact, are sufficient to establish that each suffered bad debt losses which "had a direct connection with the business carried on by these petitioners and the losses were directly a result of, and incurred in, the business" carried on by the petitioners. Cf. *Vincent C. Campbell, supra.*

In our findings of fact on this issue we have endeavored to give a full statement of the facts with reference to petitioners' activities in organizing, financing, and operating corporations and business ventures. At the conclusion of these findings we have made a finding of fact, as follows:

> During the years 1954, 1955, and 1956, Creston, Glenn, and Charles were in the business of organizing, financing, and operating corporations and business ventures. These bad debt losses described in the foregoing paragraphs were sustained in this business and are deductible as business bad debts under section 166(a), 1954 Code.

We think this finding of fact is fully supported by the evidence and that issue 2 should be decided for the petitioners. See *Vincent C. Campbell, supra; Henry E. Sage,* 15 T.C. 299.

On issue 2 we decide in favor of the petitioners.

*Issue 3. Proceeds of Assignment of Settlement Contract as Ordinary Income or Capital Gain.*

The third issue presented is whether the proceeds in the amount of $18,500 of the assignment of the 1947 contract with Shamrock are taxable to Clyde as long-term capital gain or as ordinary income. Petitioner contends that in 1935 and 1936 he received an economic interest in the gas that Shamrock sold and that as an economic interest in a mineral in place, it constituted a capital asset. Even if we assume that the services he rendered Shamrock in securing purchasers for its residue gas would constitute an investment requisite to the creation of an economic interest, and that Clyde looked not to the cash proceeds but solely to the carbon black which Shamrock received from the purchasers, it is clear that the carbon black is at least one, and possibly two steps, removed from constituting a mineral in place. *Scofield* v. *La Gloria Oil and Gas Company,* 268 F. 2d 699; *Helvering* v. *Bankline Oil Co.,* 303 U.S. 362.

Clyde's 1935 and 1936 contracts with Shamrock constituted rights to income for personal services by way of a 2 per cent commission on cash received by Shamrock from the purchasers of Shamrock's residual gas. Sec. 61(a)(1), 1954 Code; sec. 22(a), 1939 Code; sec. 22(a), Revenue Act of 1936; sec. 22(a), Revenue Act of 1934. When, therefore, Clyde accepted the agreement of 1947 whereby Shamrock agreed to pay him $110,000 in installments in release of his claims under the earlier agreements, the character of the income received

thereunder was not converted from ordinary income to capital gain. *Shuster* v. *Helvering*, 121 F. 2d 643; *Samuel Towers*, 24 T.C. 199. Nor did Clyde's assignment of the ordinary income payments in 1956 serve to convert them into capital gain. *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260. We hold that respondent did not err in treating the $18,500 received by Clyde on the 1956 assignment as ordinary income.

*Decisions will be entered under Rule 50.*